**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **SENATOR MARSHA BLACKBURN**,<br><br>*Plaintiff*,<br><br>v.<br><br>**JOHN L. SMITH**, *in his personal capacity*,<br><br>*Defendant*,<br><br>and<br><br>**THE UNITED STATES DEPARTMENT OF JUSTICE**,<br><br>*Relief Defendant*. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**<br><br>JURY DEMAND |

## INTRODUCTION

*"The prosecutor has more control over life, liberty, and reputation than any other person in America." -Attorney General (and later Supreme Court Justice) Robert H. Jackson*[1]

1. The grave abuse of authority that this case seeks to rectify began with Attorney General Merrick Garland's lawless appointment of Jack Smith as a so-called Special Counsel. That single unauthorized action enabled serious subsequent violations of Plaintiff's constitutional rights by an individual purportedly acting on "behalf" of the United States as a prosecutor, though he lacked all constitutional and legal authority to exercise the powers of the executive branch.

2. At stake are fundamental freedoms and liberty-protecting constitutional provisions and principles: the Appointments Clause, the Speech or Debate Clause, the First Amendment right

[1] Robert H. Jackson, U.S. Att'y Gen., The Federal Prosecutor, Address at the Second Annual Conference of United States Attorneys 1 (April 1, 1940), https://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf [https://perma.cc/TTN7-MTZS].

of association, the Fourth Amendment right to be free from unreasonable searches and seizures, and the Separation of Powers. The facts alleged herein demonstrate that the Executive Branch ignored our Constitution's carefully constructed design and allowed a private citizen to wield enormous power that did not belong to him, resulting in egregious violations of personal liberty and constitutional rights.

3. Plaintiff in this action, Marsha Blackburn, is a United States Senator representing the State of Tennessee. She is a U.S. citizen, a resident of Tennessee, and a Republican.

4. Defendant in this action, John "Jack" L. Smith, is a private individual who was unlawfully named Special Counsel by former Attorney General Garland in an unconstitutional and statutorily unauthorized order dated November 18, 2022 (the "Appointment Order"). From November 18, 2022, until January 1, 2025, Defendant Smith unconstitutionally acted on behalf of the Department of Justice, including against Plaintiff Blackburn, in violation of the Appointments Clause and without statutory authority.[2]

5. Attorney General Garland appointed Defendant Smith to the office of "Special Counsel" purportedly to investigate, among other things, events surrounding and leading up to the Joint Session of the House of Representatives and Senate on January 6, 2021, during which Members of Congress counted and certified the electoral votes of the 2020 presidential election. But Defendant Smith's appointment as Special Counsel was not in accordance with the Constitution. In his Special Counsel role, he was a principal officer under the Appointments Clause, yet no president appointed him, nor did Congress confirm him to serve in that role. Further,

[2] *See* Off. of Att'y Gen. Merrick Garland, Appointment of John L. Smith as Special Counsel, Order No. 5559-2022 (Nov. 18, 2022) ("Appointment Order"), https://www.justice.gov/opa/media/1260551/dl?inline [https://perma.cc/G3TT-SHWX] (order purporting to appoint Jack Smith as Special Counsel, but lacking legal basis for doing so) (last visited Sep. 29, 2026).

even if Defendant Smith served as an inferior officer in his Special Counsel role, his appointment still violated the Appointments Clause because Congress did not pass any law that authorized Attorney General Garland to appoint a Special Counsel. Rather, in violation of the Separation of Powers, Defendant Smith's appointment circumvented the strictures of the Constitution, which resulted in the deprivation of Senator Blackburn's ability to provide her advice and consent (or rejection) of Defendant Smith's appointment to serve in that powerful position of trust under the laws and Constitution of the United States.

6. After being unconstitutionally named "Special Counsel," and while therefore acting as a mere private citizen, in concert with the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Public Integrity section ("PIN"), the Special Counsel's office ("SCO"), and officials and employees of DOJ, FBI, PIN and SCO,[3] Defendant Smith violated Senator Blackburn's constitutional and civil rights. He did so in violation of the Constitution's Speech or Debate Clause, U.S. CONST. art. I, § 6; the First Amendment right of association, U.S. CONST. amend. I; the Fourth Amendment protection against unreasonable searches and seizures, U.S. CONST. amend. IV; and the "Support or Advocacy" Clause of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3)—all in contravention of Section 1985(3), which makes it unlawful for two or more persons to conspire to deprive a person of their "equal protection of the laws," "equal privileges and immunities under the laws," or "to injure any citizen in person or property" on account of their "support or advocacy" of a candidate for president. 42 U.S.C. § 1985(3).

[3] Aside from Attorney General Garland, the actors who agreed to Defendant Smith's violations of Section 1985(3) are the DOJ, DOJ's Public Integrity Section ("PIN"), the Special Counsel's office ("SCO"), the FBI, and certain employees of these agencies, including but not limited to, John Keller (Principal Deputy and Acting Chief of PIN); J.P. Cooney (Principal Deputy and Chief Operating Officer of SCO); and Ray Hulser (Defendant Smith's deputy). Collectively, these are referred to as the "Smith co-conspirators."

7. The investigation into President Donald Trump, codenamed "Arctic Frost," which is a type of orange and was chosen to mock Trump's complexion, served as the vehicle for Defendant Smith to exercise his unauthorized powers and to conspire with others to violate the constitutional and civil rights of Senator Blackburn, as well as other Republicans and Trump supporters.

8. Specifically, Defendant Smith and the Smith co-conspirators issued a subpoena which compelled the production of the toll records for the cell phone Senator Blackburn used for legislative purposes. Those toll records disclosed Senator Blackburn's associates and times and durations of conversations with those associates, without providing her any opportunity to assert her rights under the Speech or Debate Clause of the Constitution by moving to quash that subpoena. These actions violated Senator Blackburn's privileges under the Speech or Debate Clause and her First and Fourth Amendment rights.

9. Further, Defendant Smith and the Smith co-conspirators concealed from a federal district court and from Verizon (Senator Blackburn's cell phone service provider) that the subpoena sought the disclosure of the toll records of a sitting United States Senator.

10. This material omission allowed Defendant Smith and the Smith co-conspirators to obtain a non-disclosure order ("NDO") from a federal court, which prevented Verizon from alerting Senator Blackburn to the subpoena. In turn, through the NDO, Defendant Smith and the Smith co-conspirators prevented Senator Blackburn from asserting her rights under the Speech or Debate Clause, thereby also violating the constitutional Separation of Powers, the First

Amendment right of association, and the Fourth Amendment's prohibition on unreasonable searches and seizures.[4]

11. These facts and others laid out below establish that Defendant Smith conspired to violate Senator Blackburn's Speech or Debate rights, First Amendment right of association, Fourth Amendment right to be free from unreasonable searches and seizures, and Civil Right to Support or Advocate for Donald Trump, because she is a Republican and a Trump supporter, all in violation of 42 U.S.C. § 1985(3) ("Section 1985(3)").

12. As Defendant Smith himself once stated: "No one … should be above the law in this country."[5] Senator Blackburn brings this lawsuit to hold Defendant Smith accountable for his gross abuse of power and his disregard for the Constitution's Separation of Powers, the Speech or Debate Clause, the First Amendment right of association, the Fourth Amendment right to be free from unreasonable searches and seizures, and Senator Blackburn's rights under Section 1985(3).

13. Senator Blackburn further seeks to ensure that no future Attorney General ignores the Appointments Clause to enable similar civil rights violations. Thus, this litigation also seeks

---

[4] *See* Order, *In re Application of USA for 2705(b) Nondisclosure Order for Grand Jury Subpoena #GJ20230524-E0361*, 1:23-sc-01256 (D.D.C. May 25, 2023), Dkt. No. 2 ("Blackburn NDO"); *see also* Deposition of Jack Smith by H. Comm. on the Judiciary, at 39:5–6, 40:23–25 (Dec. 17, 2025) ("Smith Cong. Dep."), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf [https://perma.cc/472H-KW5E] (Defendant Smith testifying, "[W]e did seek nondisclosure orders for the toll record subpoenas" and that "inherent in getting an NDO is that at various times, people who might have arguments about why to quash a subpoena won't be able to make those arguments."); *id*. at 49:6 (Defendant Smith testifying, "I approved these subpoenas, yes."); *id*. at 48:12–13 (Defendant Smith testifying, "I spoke with my staff about this. I ultimately approved [the subpoenas for the toll records of Senator Blackburn and other Republican Senators and Members of Congress].").

[5] *Oversight of the Office of Special Counsel Jack Smith: Hearing Before the H. Comm. on the Judiciary*, 119th Cong. 8 (2026) ("*Oversight of SCO and Jack Smith*") (statement of Jack Smith, Former Special Counsel, U.S. Dep't of Just.), https://www.congress.gov/119/chrg/CHRG-119hhrg62659/CHRG-119hhrg62659.pdf [https://perma.cc/GM7J-U7E9].

to ensure that the Department of Justice—*the very administrative body* responsible for enforcing federal law on behalf of our nation—acts only within proper constitutional and statutory bounds.

14. Even if everything else the Department of Justice did in this investigation were otherwise lawful—and it was not—some of its actions, and all of Defendant Smith's related actions, became unlawful by putting an improperly appointed private citizen at the head of the investigation. Such rampant illegality and disregard for the rights of a United States citizen and sitting senator must never occur again.

**JURISDICTION AND VENUE**

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action for damages arises under the Civil Rights Act, 42 U.S.C. § 1985(3), and the Constitution.

16. This Court has personal jurisdiction over Defendant Smith because his unconstitutional actions targeted the toll records of a resident and citizen of Williamson County, Tennessee, injuring the resident and citizen of Williamson County, Tennessee. Further, the claims and injuries arose because Defendant Smith sought, obtained and analyzed toll records of a Senator representing the State of Tennessee, for calls that were initiated or received in Williamson County, Tennessee by residents of Williamson County, which included calls that were made and received while Senator Blackburn was representing the citizens of the State of Tennessee and conducting official business for the State of Tennessee, and was physically present in the state. Additionally, Defendant Smith sought these records for a phone registered and billed in Williamson County and from a telephone number with an area code associated with several towns in Davidson, Williamson, Rutherford and Sumner Counties, Tennessee.

17. Defendant Smith maintained a residence in Nashville, Tennessee during the events alleged herein.[6] Defendant Smith purchased his house in Nashville in 2016. He listed the house for sale on June 9, 2023, and sold it in July 2023.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the District.

19. This Court may issue a declaratory judgment and grant permanent injunctive relief pursuant to 28 U.S.C. §§ 2201–2202.

## PARTIES

20. Plaintiff Marsha Blackburn is an American citizen and a United States Senator, elected to represent the people of the State of Tennessee. She is a resident of Williamson County, Tennessee.

21. Defendant Jack Smith is and was a private citizen during all relevant time periods and acted without legal authority and in violation of the Appointments Clause, under the title of Special Counsel from November 18, 2022 to January 1, 2025. During that time frame, Defendant Smith agreed with the DOJ, FBI, SCO and employees of the same to subpoena the toll records of Senator Blackburn and to obtain a non-disclosure order from the U.S. District Court for the District of Columbia, knowing that binding precedent holds that such compelled disclosure of legislative materials violates the Speech or Debate Clause and further knowing controlling law required that Defendant Smith and the Smith co-conspirators provide Senator Blackburn the opportunity to assert her rights under that clause by seeking to quash the subpoena.

---

[6] In addition, Defendant Smith served as the First Assistant U.S. Attorney in the Middle District of Tennessee from February 9, 2015 to March 13, 2017, and then as acting U.S. Attorney in the Middle District of Tennessee from March 14, 2017 to September 21, 2017.

22. Relief Defendant United States Department of Justice ("DOJ") is sued solely because DOJ remains in control of the unlawfully obtained toll records, and it is the only party capable of carrying out the injunctive relief listed in paragraph (d) of the Prayer for Relief.

## FACTUAL BACKGROUND

### I. DEFENDANT SMITH'S APPOINTMENT AS "SPECIAL COUNSEL" VIOLATED THE APPOINTMENTS CLAUSE

23. On November 18, 2022, Attorney General Garland purported to appoint Defendant Smith as Special Counsel for the DOJ. The stated purpose of the appointment was "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." Appointment Order, *supra*.

24. Defendant Smith was neither nominated to the role of Special Counsel (or any other role) by then-President Joe Biden nor confirmed by the Senate. He was not serving as a U.S. Attorney, nor in any other governmental capacity at the time of the purported appointment. Rather, he was a private citizen.

25. The Constitution's Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint … all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law." U.S. CONST. art. II, § 2, cl. 2. It further provides that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id*. Regarding the appointment of inferior officers, "any decision to dispense with Presidential appointment and Senate confirmation is

Congress's to make, not the President's." *Weiss v. United States*, 510 U.S. 163, 187 (1994). The Appointments Clause distinguishes between principal officers and inferior officers.

**A. As "Special Counsel," Defendant Smith Was Acting as a Principal Officer**

26. As "Special Counsel," Defendant Smith was exercising, without authority, the powers of a principal officer of the United States. The powers he wielded *exceeded* those held by Senate-confirmed U.S. Attorneys, *see, e.g.*, 28 U.S.C. § 547(1) (providing authority for U.S. Attorneys to prosecute crimes only within their districts), even though U.S. Attorneys, who are principal officers, must be appointed by the President and confirmed by the Senate.

27. Then-President Joe Biden did not appoint Defendant Smith to serve as Special Counsel; rather, Attorney General Garland named him to that role based on DOJ regulations, and specifically the Final Rule issued in July 1999, codified as 28 C.F.R. §§ 600.1 through 600.10 ("Special Counsel Regulations").

28. Those regulations define a Special Counsel's power, duties, responsibilities and obligations, and are designed to allow the Special Counsel to operate with scant supervision. *See* 28 C.F.R. § 600.6 (allowing the Special Counsel to decide whether to "inform or consult with the Attorney General" about "the conduct of his or her duties and responsibilities"); 28 C.F.R. § 600.7(a) (giving Special Counsel discretion on whether to "consult directly with the Attorney General" even under "extraordinary circumstances"); 28 C.F.R. § 600.8 (requiring only that the Special Counsel "notify" the Attorney General of developments); 28 C.F.R. § 600.7(b) ("The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department."); *id.* (in reviewing Special Counsel's actions, "the Attorney General will give great weight to the views of the Special Counsel").

29. The Special Counsel Regulations also make removal difficult. Specifically, removal at will is disallowed; rather, removal is only permitted where there is "misconduct, dereliction of duty, incapacity, conflict of interest, or … other good cause." 28 C.F.R. § 600.7(d).

30. The lack of supervision and the constrained removal authority render a Special Counsel a "principal officer" even if ordinary U.S. Attorneys are not. Factors in determining whether individuals are principal or inferior officers include (1) whether an officer is subject to supervision and direction of a principal officer; (2) whether an officer is removable for cause; and (3) whether a supervisor in the executive branch can reverse an officer's decisions. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1338 (D.C. Cir. 2012).

### B. Even if Defendant Smith's Special Counsel Office Had Been an Inferior Officer Position, There Was No Act of Congress Permitting Attorney General Garland to Fill It

31. Alternatively, if a Special Counsel is not a principal officer, but instead Defendant Smith was acting as an inferior officer, as he has previously argued, *see, e.g.*, *United States v. Trump*, 740 F. Supp. 3d 1245, 1253 (S.D. Fla. 2024), his appointment would have been lawful only if Congress had authorized the Attorney General to appoint a Special Counsel. U.S. CONST. art. II, § 2, cl. 2 ("[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.").

32. While Congress had previously purported to authorize the appointment of an independent counsel, the Independent Counsel Act expired in 1999, and since then, Congress has passed no successor statute. Thus, there is no current statutory authority for any executive to appoint a Special Counsel, nor did one exist in 2022 when Defendant Smith was purportedly appointed as Special Counsel. In short, there was no statutory or other Congressional authority for

Attorney General Garland to appoint anyone to this role, as required to appoint inferior officers by the Appointments Clause.

33. Nevertheless, the Appointment Order points to four statutes which Attorney General Garland relied on as purported authority to appoint Defendant Smith as Special Counsel: 28 U.S.C. §§ 509, 510, 515, and 533. But none of these statutes conveyed the authority Attorney General Garland claimed.

34. First, 28 U.S.C. § 509 is a generic provision vesting DOJ's functions in the Attorney General. It neither establishes an office nor grants authority to appoint anyone to an office.

35. Second, 28 U.S.C. § 510 permits the Attorney General to delegate authority to employees of the DOJ. But it too neither creates any position nor grants the Attorney General the authority to fill such a position. It merely allows the Attorney General the ability to delegate tasks to *existing* employees of the DOJ. Defendant Smith was not an "existing employee" of the United States. Thus, 28 U.S.C. § 510 does not create authority for Defendant's Special Counsel appointment. *Cf. In re Grand Jury Subpoenas to the Off. of the N.Y. State Att'y Gen.*, No. 26-156, 2026 WL 2450485, at *1 (2d. Cir. Aug. 21, 2026) (holding that appointment of an Acting U.S. Attorney must be of someone already serving in the office under the Federal Vacancies Reform Act).

36. Third, 28 U.S.C. § 515(b) states that "[e]ach attorney specially retained under authority of the Department of Justice shall be commissioned as a special assistant to the Attorney General or special attorney, and shall take the oath required by law." *Id*. Thus, the statute refers to attorneys who have been "retained" already, past tense, and merely establishes procedures (commissioning and oath-taking) and classification (special assistant) for those already-retained

attorneys. Use of the past tense, "retained," demonstrates that Congress did not confer power upon anyone to "retain" anyone anew, but rather merely delineated requirements for those already "retained." *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 620 (D.D.C. 2018) ("§ 515(b) does not explicitly authorize the Acting Attorney General to appoint a Special Counsel."). Further, this statute does not use the word "appoint," and neither retain, nor commission, nor those two words used together, can substitute for "appoint." Thus, 28 U.S.C. § 515(b), does not give the Attorney General the power to appoint officers like the Special Counsel.

37. Fourth, 28 U.S.C. § 533 could not convey to Attorney General Garland the power to appoint Defendant Smith as Special Counsel. This section appears in a chapter devoted to the FBI, and permits the Attorney General the ability to

> appoint officials—
> (1) to detect and prosecute crimes against the United States;
> (2) to assist in the protection of the person of the President; and
> (3) to assist in the protection of the person of the Attorney General.
> (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.

*Id*. This does not supply the power the Attorney General claimed because "officials" are not the same as "officers." Congress has repeatedly used the term "officers and employees" when vesting officer-appointing power in heads of departments. *See, e.g.*, 7 U.S.C. § 610(a) ("Secretary of Agriculture may appoint such officers and employees"); 20 U.S.C. § 3461(a) ("Secretary of Education is authorized to appoint … officers and employees"). In instances where Congress does use the term "officials" synonymously with "officers," it also specifies that they must be "appointed … by the President by and with the advice and consent of the Senate." *See, e.g.*, 22 U.S.C. § 285a(a)(1)(B); 22 U.S.C. § 2651a(d). Further, this section has never been cited as a source of authority for appointing Special Counsel, and the Special Counsel Regulations themselves do not cite Section 533 as any source of authority.

38. Attorney General Garland's decision to ignore the Appointments Clause is more than a mere procedural oversight: It deprived Senator Blackburn and her fellow senators the opportunity to offer their Advice and give (or withhold) their Consent to bestow on Defendant Smith the power to act as a principal law enforcement officer of the federal government. U.S. CONST. art. II, § 2, cl. 2.

39. Defendant Smith lacked all authority to exercise the powers of a Special Counsel and was therefore acting as a private individual when he conducted the Arctic Frost investigation. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689–90 (1949) (holding that when a "statute or order conferring power upon the officer" is unconstitutional, "the power has been conferred in form but the grant is lacking in substance," and therefore his actions are considered individual actions). Defendant Smith's subsequent abuse of the power he exercised from his fictitious appointment as Special Counsel demonstrates precisely why the Senate's advice and consent are required for such appointments.

## II. DEFENDANT SMITH VIOLATED SENATOR BLACKBURN'S PRIVILEGES UNDER THE SPEECH OR DEBATE CLAUSE OF THE CONSTITUTION

40. The Speech or Debate Clause of the Constitution provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1.

41. The Supreme Court has explained that "[t]he Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972).

42. The Speech or Debate Clause of the Constitution protects legislative materials from compelled disclosure. *United States v. Rayburn House Off. Bldg., Room 2113*, 497 F.3d 654, 656,

662 (D.C. Cir. 2007) (holding that "the compelled disclosure of privileged material to the Executive during execution of the search warrant … violated the Speech or Debate Clause").

43. The Speech or Debate Clause of the Constitution also requires that Senators or Members of Congress be given an opportunity to "identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id*.

### A. Defendant Smith Violated Senator Blackburn's Privilege Under the Speech or Debate Clause by Denying Her the Opportunity to Assert the Privilege over Her Toll Records

44. In violation of the Speech or Debate Clause, Defendant Smith subpoenaed Senator Blackburn's cell phone toll records—which include information concerning dates, times, durations and telephone numbers for sources or recipients of calls placed and received—for the period of January 4, 2021 to January 7, 2021.

45. Defendant Smith acknowledged that he and the Smith co-conspirators decided to subpoena Senator Blackburn's toll records.[7] *See* Smith Cong. Dep., *supra*, at 98:11–14 ("I can say that when I was special counsel, I was the person who approved subpoenas of that nature. … And with, of course, the fact that I wanted consultation with Public Integrity.").[8]

---

[7] Smith Cong. Dep., *supra*, at 48:10-13 (Defendant Smith testifying, "I spoke with my staff about this. I ultimately approved [the subpoenas for the toll records of Senator Blackburn and other Republican Senators and Members of Congress.]"); *id.* at 49:6 (Defendant Smith testifying again that he approved the subpoenas for the Republican Senators and Members of Congress that they subpoenaed); *see also* Memorandum from the Election Investigation Team, Off. of Special Counsel Jack Smith, to J.P. Cooney and Ray Hulser, attached to Letter from Patrick D. Davis, Assistant Att'y Gen. for Legis. Affs., to Charles E. Grassley, Chairman, S. Comm. on the Judiciary, at 13 ("Letter from Davis to Grassley"), https://www.grassley.senate.gov/imo/media/doc/doj_to_grassley_johnson_-_pin_consultation.pdf [https://perma.cc/3DF6-W79L] (seeking authorization to subpoena toll records of Senator Blackburn and other Republican Senators and Members of Congress).

[8] Even though Defendant Smith maintained that he did not need to go to the Deputy Attorney General or the Office of Legal Counsel to obtain or execute these subpoenas, Smith Cong. Dep., *supra*, at 98:16–17 (stating he did not "have to go to the DAG [and] didn't have to go to OLC"), a

46. Further, Defendant Smith agreed with the Smith co-conspirators to execute the subpoena with a non-disclosure order ("NDO") to prevent the subpoena recipient from informing Senator Blackburn of the subpoena's existence.[9] More troubling, the Special Counsel's office failed to inform the presiding judge that the subpoena sought records of a sitting United States Senator. Smith Cong. Dep., *supra*, at 42:15–18. Accordingly, the judge who signed the NDO did not know, and could not have known, that Defendant Smith demanded the toll records of Senator Blackburn. The court then issued the NDO under seal. *See* Blackburn NDO, *supra*.

47. In granting the NDO, which Defendant Smith and the Smith co-conspirators explicitly requested from the court, the court stated that it found "reasonable grounds to believe that such disclosure will result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation." Blackburn NDO, *supra*; *see also* Smith Cong. Dep., *supra*, at 40:5–12. Whether the court would have made such a finding had it known it was dealing with a U.S. Senator is an open question. The relevant portion of the NDO is as follows:

---

January 13, 2023 Memo summarizing a "notable" meeting the Special Counsel's office had with the Solicitor General indicated Defendant Smith "[c]ommitted to communication/consult with SG on the important precedent-setting issues we face in [the] area[] of … Speech or Debate," among other legal issues. U.S. Dep't of Just., AG Briefing (Jan. 13, 2023) ("AG Briefing Memo"), attached to Arctic Frost: AG Briefing, DOJ Emails, KP Subpoenas, NDOs, at 1–6 (Mar. 24, 2026), https://www.grassley.senate.gov/imo/media/doc/arctic_frost_-_ag_briefing_doj_emails_kp_subpoenas_ndos.pdf [https://perma.cc/9S4T-ESJP]. Yet, even though Defendant Smith acknowledged he "regularly" consulted with the Solicitor General to make sure "we got the law right," Smith Cong. Dep., *supra*, at 26:6–9, 26:13–16, he testified that he had no recollection of ever discussing the subpoenas for Senators and Members of Congress with the Solicitor General, *id*. at 49:17–21.

[9] Blackburn NDO, *supra*; Smith Cong. Dep., *supra*, at 39:5–6 (Defendant Smith testifying, "we did seek nondisclosure orders for the toll record subpoenas").

Case 1:23-sc-01256-JEB *SEALED* Document 2 Filed 05/25/23 Page 1 of 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN RE APPLICATION OF USA FOR 2705(b) NONDISCLOSURE ORDER FOR GRAND JURY SUBPOENA #GJ20230524-E0361 | Case No. 23-sc-1256<br><br>**Filed Under Seal** |
|---|---|

**ORDER**

This matter having come before the Court pursuant to an application under 18 U.S.C. § 2705(b) requesting an order directing Verizon ("PROVIDER"), an electronic communication and/or remote computing service provider located in Bedminster, NJ, not to notify any other person of the existence of subpoena number **GJ20230524-E0361** issued by the United States on behalf of a federal Grand Jury empaneled in the United States District Court for the District of Columbia (the "Subpoena"), the Court finds reasonable grounds to believe that such disclosure will result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation. *See* 18 U.S.C. § 2705(b)(3)-(5).

**IT IS THEREFORE ORDERED** that, pursuant to 18 U.S.C. § 2705(b), PROVIDER and its employees shall not disclose the existence of the Subpoena to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

**IT IS FURTHER ORDERED** that the application and this Order are sealed until otherwise ordered by the Court.

48. Defendant Smith admitted in his deposition that when he "sought these nondisclosure orders, the judge didn't know [the subpoenas were for the toll records of] a Member of Congress." Smith Cong. Dep., *supra*, at 42:15–18.

49. The subpoena recipient, Verizon, also did not know whose cell phone records Defendant Smith sought because Senator Blackburn's name was not on the subpoena as the subscriber associated with the number. And even if Verizon had learned that the records sought

were hers, the NDO required Verizon to remain silent. The NDO prohibited Verizon from informing Senator Blackburn that her cell phone records had been subpoenaed for at least one year.[10] By seeking the toll records without alerting the cell phone provider or the NDO-issuing court to the identity of the individual whose toll records were targeted, Defendant Smith deprived Senator Blackburn of her right to assert her privileges under the Speech or Debate Clause.

50. The subpoena sought the following from Senator Blackburn's phone records: "[a]ll call detail records, including but not limited to detail records for inbound and outbound calls, text messages, direct connect, and voicemail messages," "[m]eans and source of payment for … service (including any credit card or bank account number) and billing records," "[r]ecords of session times and durations," telephone numbers from incoming and outgoing calls (thus providing identity of callers and recipients), IP addresses, and more. *See* Grand Jury Subpoena Attachment, Subpoena to Testify Before a Grand Jury #GJ20230524-E0361 (on file with the New Civil Liberties Alliance).

51. The Grand Jury Subpoena Attachment lists the following types of information subpoenaed:

[10] *See, e.g.*, Blackburn NDO, *supra*; Letter from Robert S. Fischer, Senior Vice President of Fed. Gov't Rels. & Pub. Affs., to Sen. Charles E. Grassley 4 (Oct. 24, 2025) (on file with the New Civil Liberties Alliance) ("This NDO prohibited us from notifying anyone outside of the company other than its attorneys of the existence of the subpoena. Accordingly, we did not notify the relevant congressional members about the subpoena. The NDO Verizon received in connection with this subpoena was dated May 25, 2023 [for Senator Blackburn and other Republican Senators and Members of Congress], and was effective for one year from that date.").

**Grand Jury Subpoena Attachment**

For any and all accounts associated with the following identifiers:

[redacted]

Provide the following records from January 4, 2021, through January 7, 2021:

- Subscriber information
- Names (including subscriber names, user names, and screen names)
- Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses)
- All call detail records, including but not limited to detail records for inbound and outbound calls, text messages, direct connect, and voicemail messages
- Length of service (including start date) and types of service utilized
- Means and source of payment for such service (including any credit card or bank account number) and billing records
- Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Station Equipment Identities ("IMEI"))
- Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions
- Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses (including carrier grade natting addresses or ports))

52. The materials subpoenaed included the legislative materials of U.S. Members of Congress, including Senator Blackburn, namely details about communications she had in her capacity as a U.S. Senator regarding speech, debate and/or deliberations in regard to the legislative process. The purpose of the Speech or Debate Clause is "to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel*, 408 U.S. at 616. By obtaining a judicially endorsed order that Verizon could not disclose the subpoena of Senator Blackburn's toll records, Defendant Smith ensured that Senator Blackburn would not know about the subpoena, thus depriving her of her constitutionally guaranteed opportunity to assert a privilege of nondisclosure under the Speech or Debate Clause.

53. The Speech or Debate Clause guarantees that Members of Congress be permitted "to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Rayburn House*, 497 F.3d at 656, 662 (holding that "the compelled disclosure of privileged material to the Executive during execution of the search warrant … violated the Speech or Debate Clause").

54. In addition to failing to provide the constitutionally required opportunity to challenge the subpoena pursuant to the Speech or Debate Clause, Defendant Smith and the Smith co-conspirators ignored the command of 2 U.S.C. § 6628(c), which provides that no law or rule may be used to prevent a service provider from notifying a Senate office that data or records have been sought through legal process.

55. Specifically, 2 U.S.C. § 6628(c) states, "any provider for a Senate office … shall not be barred, through operation of any court order or any statutory provision, from notifying the Senate office of any legal process seeking disclosure." The "term 'Senate office' means a committee or office of the Senate, including a Senator, an officer of the Senate, or an employee of, intern at, or other agent of a committee or office of the Senate." 2 U.S.C. § 6628(a)(7).

56. Defendant Smith and the Smith co-conspirators knowingly prevented the required statutory notification when subpoenaing the toll records of Senator Blackburn and other Republican Senators and Members of Congress by seeking an NDO covering the subpoena.

57. In accordance with the subpoena, Verizon produced to Defendant Smith and the Smith co-conspirators Senator Blackburn's toll records, and specifically the time, telephone numbers and duration of all calls placed or received on her cell phone. *See* Verizon, Talk Activity of Marsha Blackburn 12–13 (Jan. 2021) (on file with the New Civil Liberties Alliance).

58. The records that Verizon produced inadvertently covered the time from January 1, 2021 to January 4, 2021, rather than the dates subpoenaed of January 4, 2021 to January 7, 2021. *See id*. On information and belief, neither Defendant Smith nor the Smith co-conspirators followed up with Verizon to request Senator Blackburn's toll records from the subpoenaed timeframe.

59. By unlawfully subpoenaing these toll records, Defendant Smith and the Smith co-conspirators also compelled the disclosure of the individuals with whom Senator Blackburn associated.

60. By or about September 27, 2023, Defendant Smith and the Smith co-conspirators began to conduct a preliminary analysis of Senator Blackburn's toll records, in further violation of her rights under the Speech or Debate Clause.[11]

61. Defendant Smith and the Smith co-conspirators further agreed to maintain the improperly disclosed legislative materials until at least February 1, 2030.[12] But under *Rayburn House*, 497 F.3d at 665, those records must be returned to Senator Blackburn.

62. A similar subpoena seeking toll records from a different sitting senator, this one served on AT&T, provides further evidence that Defendant Smith had knowledge that the

---

[11] *See* FBI, CAST Assistance, 56D-WF-[REDACTED]-CASE (Sep. 27, 2023), https://www.grassley.senate.gov/imo/media/doc/arctic_frost_toll_analysis_of_us_senators.pdf [https://perma.cc/58S9-J7SL] (stating that "FBI Special Agent [redacted] conducted preliminary toll analysis on limited tolls [*sic*] records associated with the following US Senators: … Marsha Blackburn").

[12] *See, e.g.*, FBI, Case Closing, 56D-WF-3587997, at 3 (Sep. 30, 2025), attached to FBI, Arctic Frost Closing Documents, at 38–40, https://justthenews.com/sites/default/files/2026-05/Arctic%20Frost%20-%20FBI%20-%20Closing%20Documents.pdf [https://perma.cc/22XR-PKYZ] (explaining evidence obtained by Special Counsel's office will be retained until at least February 1, 2030).

Blackburn subpoena and accompanying NDO deprived Senator Blackburn of her ability to assert her Speech or Debate privilege.

63. Specifically, AT&T Senior Vice President and General Counsel David McAtee testified to the Senate Judiciary Subcommittee on Privacy, Technology, and the Law that its Legal Department discovered that two of the subpoenas issued by the Special Counsel's office, sought "the production of records pertaining to campaign accounts of two sitting Members of Congress."[13]

64. On its own, AT&T discovered that the subpoenas targeted two sitting Members of Congress, as Defendant Smith and the Smith co-conspirators did not identify in either the subpoenas or the accompanying NDOs that they sought toll records from Members of Congress. *Id*. at 2–3.

65. After receiving those subpoenas, AT&T's Legal Department emailed the Special Counsel Office to identify potential constitutional issues with at least one subpoena. *Id*.

66. According to McAtee: "In May 2023, the AT&T Legal Department engaged with the [SCO] regarding a subpoena that [AT&T's] Legal Department" was particularly concerned about potential Speech or Debate Clause implications and sought the SCO's view of whether the Speech or Debate Clause applied. *Id*.

67. McAtee testified: "In unambiguous, written correspondence that has been produced to this Committee, our legal team sought the Special Counsel's Office's view on the applicability of the Speech or Debate Clause of the U.S. Constitution to the subpoena." *Id*. Yet, "[t]he Special Counsel's Office did not respond." *Id*. at 3.

---

[13] *See Arctic Frost Accountability: Oversight of Telecommunications Carriers' Responses to Jack Smith's Witch Hunt: Hearing Before the Subcomm. on Priv., Tech. & the L. of the S. Comm. on the Judiciary*, 119th Cong. 2 (2026) (testimony of David R. McAtee II, Senior Vice President & Gen. Counsel, AT&T Inc.), https://www.judiciary.senate.gov/imo/media/doc/9a8e5b2f-aea0-248d-ef60-3f03b8eb8a2c/2026-02-10_Testimony_McAtee.pdf [https://perma.cc/TAM3-BEB6].

68. Rather than respond to McAtee's inquiry, Defendant Smith and the Smith co-conspirators did nothing to enforce the subpoena. *Id.* ("The Special Counsel's Office … did not pursue the subpoena further. As a result, no records were produced [by AT&T in response to that particular Arctic Frost subpoena].").

69. Had Defendant Smith and the Smith co-conspirators sought to enforce the subpoena, the NDO-issuing court would have discovered that they had subpoenaed the toll records of Members of Congress without providing the constitutionally mandated opportunity for Senators and Representatives to "identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Rayburn House*, 497 F.3d at 662.

70. Unlike AT&T, Verizon did not realize the subpoena that Defendant Smith and the Smith co-conspirators had agreed to serve on Verizon demanded production of the records of a sitting U.S. Senator, Senator Blackburn.

71. Efforts by Defendant Smith and the Smith co-conspirators to conceal the unlawful subpoenas from the people whose toll records were sought were successful. Senator Blackburn did not learn that her Speech or Debate rights had been violated until October 6, 2025.

72. Specifically, minutes before Chairman Grassley publicly released details about the subpoenas—facts he learned only after a whistleblower came forward—Senator Blackburn was told about the illegal subpoenas in a briefing then-FBI Deputy Director Dan Bongino provided the targeted Senators.[14]

[14] *See* Press Release, S. Comm. on the Judiciary, Biden FBI Spied on Eight Republican Senators as Part of Arctic Frost Investigation, Grassley Oversight Reveals (Oct. 6, 2025), https://www.judiciary.senate.gov/press/rep/releases/biden-fbi-spied-on-eight-republican-senators-as-part-of-arctic-frost-investigation-grassley-oversight-reveals [https://perma.cc/YG5P-TPBX] (announcing Defendant Smith and co-conspirator FBI "[s]pied on [e]ight Republican Senators as [p]art of Arctic Frost").

73. Had she had the opportunity to identify and assert her Speech or Debate privilege, Senator Blackburn would have asserted that privilege, by filing a motion to quash the subpoena to prevent the disclosure of portions of her toll records that captured communications she had in her capacity as a U.S. Senator, concerning speech, debate and deliberation concerning the legislative process.

### B. Defendant Smith Knew that His Subpoena of Senator Blackburn's Toll Records Violated the Speech or Debate Clause

74. Defendant Smith knew that he was violating Senator Blackburn's privileges under the Speech or Debate Clause when he subpoenaed her toll records under an NDO that kept her from being able to seek to quash it.

75. Defendant Smith testified that he knew that the NDO would prevent Senator Blackburn from having the opportunity to "identify and assert the privilege … before their compelled disclosure to Executive agents," as required by the Speech or Debate Clause. *Rayburn House*, 497 F.3d at 662; Smith Cong. Dep., *supra*, at 39:5–6 (Defendant Smith testifying: "[W]e did seek nondisclosure orders for the toll record subpoenas" for Republican Senators and Members of Congress.); *id.* at 40:23–25 (Defendant Smith explaining: It is "inherent in getting an NDO … that at various times, people who might have arguments about why to quash a subpoena won't be able to make those arguments."); *id*. at 41:19–20 (Defendant Smith stating: "But the point of telling you that was that inherent in an NDO is it may be that certain arguments about why a subpoena should be quashed can't be made."); *id*. at 43:21–23 (Defendant Smith confirming: "[B]y not telling the [Senators and] Members [of Congress] … by going through this NDO process, … they didn't have an opportunity to litigate the Speech or Debate concerns.").

76. An internal DOJ memorandum dated January 13, 2023, and entitled "AG Briefing,"[15] detailed interactions between former Special Counsel Jack Smith's team, federal judges and the FBI, and further confirms Defendant Smith and the Smith co-conspirators knew their subpoenas and NDO violated the Speech or Debate Clause. A section in the AG Briefing Memo headlined "Tolls for Members of Congress" emphasized, "[s]ome [M]embers of Congress communicated with Trump and his surrogates in the lead up to and during the events of January 6—such as [Speaker] Kevin McCarthy, [Senator] Mike Lee, [Representative] Louis Gomert [*sic*], and others." *Id*. at 13. The memo continues: "It is unlikely that many of those members will cooperate with our investigation, and they likely have a valid Speech or Debate privilege immunizing them from compelled testimony." *Id*. It further states, "[i]n the coming week or so, we intend to issue subpoenas for the toll records of certain [M]embers of Congress for the period between the 2020 election and January 20 to investigate those communications—and to establish logical evidentiary inferences regarding Trump and his surrogates' actions and intent." *Id.*

77. Interactions with PIN, the subset of the DOJ charged with ensuring that DOJ prosecutions are conducted fairly, impartially and in accordance with the law, also alerted Defendant Smith and the Smith co-conspirators to the constitutional protections the Speech or Debate Clause provides. The DOJ's practice manual, the "Justice Manual," has had a separate section for "Investigations Involving Members of Congress" since at least 2018. The version in effect in March 2023 stated that "[c]onsultation with the Public Integrity Section is required in all investigations involving a Member of Congress or congressional staff member. In particular, the Public Integrity Section must be consulted prior to … applying for a search warrant for a location or device in which legislative materials are likely to be found." U.S. Dep't of Just., Just. Manual

---

[15] AG Briefing Memo, *supra*.

§ 9-85.110 (2023) ("Investigations Involving Members of Congress") (added April 2018).[16] Thus, the Justice Manual itself recognizes that special care must be taken when investigating Members of Congress because of the possibility that legislative materials will be encompassed in a subpoena, thus triggering the rights of the Member of Congress to assert his or her privilege under the Speech or Debate Clause.

78. Defendant Smith testified that he obtained PIN's approval before agreeing with the DOJ and SCO to subpoena Verizon for Senator Blackburn's toll records. Smith Cong. Dep., *supra*, at 42:9–12 ("I would just also add that my office had folks who were really the Department experts on Speech or Debate. And when we sought these subpoenas [of cell phone service providers for the toll records of Senator Blackburn and other Republican Senators and Members of Congress], we got approval from Public Integrity, who are the sort of keepers of that issue, and they concurred in us getting these subpoenas."); *Oversight of SCO and Jack Smith*, *supra*, at 24 (testimony of Jack Smith that "[t]he toll records subpoenas that [they] secured were with the concurrence of the [P]ublic [I]ntegrity [Section].").[17]

79. PIN green-lit the subpoena of Senator Blackburn's toll records despite knowing they might contain legislative materials.

---

[16] March 18, 2023 version found via the Wayback Machine and available at: https://web.archive.org/web/20230318062450/https://www.justice.gov/jm/jm-9-85000-protection-government-integrity#9-8.5.110#9-8.5.110.

[17] As noted *supra* at 14–15, note 8, a January 13, 2023 Memo summarized a "notable" meeting between the Special Counsel's office and the Solicitor General, which indicated Defendant Smith "[c]ommitted to communication/consult with SG on the important precedent-setting issues we face in [the] area[] of … Speech or Debate," among other legal issues. AG Briefing Memo, *supra*, at 2. Defendant Smith testified that he had no recollection of ever discussing the subpoenas for Senators and Members of Congress with the Solicitor General. Smith Cong. Dep. at 49:17–21.

80. In a May 17, 2023 memorandum (the "PIN Email"), PIN identified controlling D.C. Circuit precedent, *Rayburn House*, which made clear the planned subpoenas would violate Senator Blackburn's rights under the Speech or Debate Clause.

81. The PIN Email is set out below, and states in relevant part:

> Based on the email below and our conversation, PIN concurs in the subpoenas for toll records for the identified Members of Congress from Jan. 4, 2021, through Jan. 7, 2021. As you are aware, there is some litigation risk regarding whether compelled disclosure of toll records of a Member's legislative calls violates the Speech or Debate Clause in the D.C. Circuit. *See United States v. Rayburn House Office Building*, 497 F.3d 654, 662 (D.C. Cir. 2007) ("The bar on compelled disclosure is absolute.") … . Even putting aside the government's potentially meritorious argument that the calls over the relevant period—especially unsolicited incoming calls—would not constitute protected legislative acts, given my understanding of the low likelihood that any of the Members listed below would be charged, the litigation risk should be minimal here.

E-mail from John D. Keller, Principal Deputy Chief, Pub. Integrity Section, U.S. Dep't of Just., to Molly Gaston, U.S. Dep't of Just., at 8 (May 17, 2023, at 10:43 ET) ("May 17, 2023 PIN Email to Special Counsel's Office"), attached to Letter from Davis to Grassley, *supra*, at 8.

J.P., Ray—attached is a revised memo that includes the fact of PIN consultation/concurrence, and below is the consult with PIN. Thanks.

**From:** Keller, John (CRM) <[redacted]@usdoj.gov>
**Sent:** Wednesday, May 17, 2023 10:43 AM
**To:** MGG (JSPT) <[redacted]@usdoj.gov>
**Cc:** TPW (JSPT) <[redacted]@usdoj.gov>
**Subject:** RE: Consult

Thanks, Molly. Good to hear from you and I'm glad that you're settling into your new role!

Based on the email below and our conversation, PIN concurs in the subpoenas for toll records for the identified Members of Congress from Jan. 4, 2021, through Jan. 7, 2021. As you are aware, there is some litigation risk regarding whether compelled disclosure of toll records of a Member's legislative calls violates the Speech or Debate Clause in the D.C. Circuit. *See United States v. Rayburn House Office Building*, 497 F.3d 654, 662 (D.C. Cir. 2007) ("The bar on compelled disclosure is absolute."); *In re Grand Jury Investigation*, 587 F.2d 589, 595 (3d Cir. 1978) ("Thus, telephone calls, placed or received by [the Member] or his staff in gathering from outsiders information which is weighed in the process of deciding how to vote, in drafting legislation, and in preparing for argument, may still be privileged as to use against him, even if not as to use against third parties."); *id.* at 594 ("The caselaw is clear that a legislator asserting the invasion of the Speech or Debate Clause privilege by use of a grand jury subpoena to a third party may intervene and oppose such use."). Even putting aside the government's potentially meritorious argument that the calls over the relevant period--especially unsolicited incoming calls--would not constitute protected legislative acts, given my understanding of the low likelihood that any of the Members listed below would be charged, the litigation risk should be minimal here.

-John

*Id*.

82. Thus, Defendant Smith and the Smith co-conspirators knew that "[t]he bar on compelled disclosure is absolute," under the Speech or Debate Clause. *Rayburn House*, 497 F.3d at 660.

83. *Rayburn House* also held that when investigators seek materials that potentially include legislative materials, the only way to avoid violating the Speech or Debate Clause is to provide Senators and Representatives the "opportunity to identify and assert the privilege … *before* their compelled disclosure to Executive agents." *Id*. at 662 (emphasis added).

84. Yet Defendant Smith and the Smith co-conspirators denied Senator Blackburn her opportunity to identify and assert the Speech or Debate privilege by obtaining an NDO and then

serving that NDO with the subpoena. They did so while intentionally withholding from the Court the fact that the subpoena sought the toll records of Senator Blackburn.

85. The PIN Email made clear that Defendant Smith and the Smith co-conspirators agreed to subpoena Senator Blackburn's toll records not because the Speech or Debate Clause did not protect those records, but *in spite of* the Speech or Debate Clause's protections. In other words, they were willing to violate the Constitution because they thought there was a low "litigation risk."

86. Specifically, after citing *Rayburn House*, which is the controlling precedent in the District of Columbia (*i.e.*, the jurisdiction where the grand jury that issued the subpoena was convened, and where the federal judge signed the NDO), the PIN email concluded: "Even putting aside the government's potentially meritorious argument that the calls over the relevant period—especially unsolicited incoming calls—would not constitute protected legislative acts, given my understanding of the low likelihood that any of the Members listed below would be charged, the litigation risk should be minimal here." May 17, 2023 PIN Email to Special Counsel's Office, *supra*.

87. This language confirms that Defendant Smith agreed to subpoena the toll records regardless of whether they "constituted protected legislative acts" because "the litigation risk should be minimal." *Id*.

88. Defendant Smith stressed that "the thing [he] was most concerned about was making sure Public Integrity, who was sort of the experts on this issue, that they were consulted." Smith Cong. Dep., *supra*, at 47:4–47:5. Indeed, the PIN employees were charged specifically with ensuring that investigations into Members of Congress are done with integrity and according to the law.

89. However, when the supposed PIN "experts," *id*., identified the controlling case law that established that subpoenaing Senator Blackburn's toll records under an NDO would violate the Speech or Debate Clause, Defendant Smith nonetheless agreed to subpoena those records (and to seek an NDO knowing that it would prevent her finding out about it) based on PIN's pragmatic view that the "litigation risk" was minimal. *See* May 17, 2023 PIN Email to Special Counsel's Office, *supra*.

90. A pragmatic assessment that a constitutional violation will not negatively impact a prosecution, however, does not render it any less serious of a constitutional violation.

91. Further, PIN's pragmatic assessment was meaningless. Under *Rayburn House*, the Speech or Debate Clause rights that inure to Senator Blackburn and other Members of Congress do not depend whatsoever on whether or not they will be charged with any crime. It is therefore irrelevant that Defendant Smith and the Smith co-conspirators did not anticipate that "any of the Members listed below would be charged." They had to honor her Speech or Debate Clause rights regardless.

## III. DEFENDANT SMITH VIOLATED SENATOR BLACKBURN'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES

92. As a Senator, under the Speech or Debate Clause and 2 U.S.C. § 6628, Senator Blackburn had a reasonable expectation of privacy in her cell phone toll records and a right to seek to quash the subpoena of those records.

93. Defendant Smith agreed with the Smith co-conspirators to obtain an NDO from the NDO-issuing court while withholding material information from the court, namely that the subpoena sought the records of a sitting U.S. Senator.

94. Defendant Smith and the Smith co-conspirators unlawfully obtained the NDO.

95. The unlawfully obtained NDO prohibited Verizon from alerting Senator Blackburn of the subpoena, which prevented her from seeking to quash the subpoena.

96. Had Senator Blackburn been informed of the subpoena, she would have asserted her Speech or Debate privilege by filing a motion to quash the subpoena to prevent the disclosure of portions of her toll records that captured communications she had in her capacity as a United States Senator, which constitute speech, debate and deliberation concerning the legislative process.

97. By agreeing with the Smith co-conspirators to obtain the NDO unlawfully, Defendant Smith unreasonably searched and seized Senator Blackburn's toll records, in violation of the Fourth Amendment.

## IV. DEFENDANT SMITH VIOLATED SENATOR BLACKBURN'S FIRST AMENDMENT RIGHT OF ASSOCIATION AND SECTION 1985(3)'S SUPPORT OR ADVOCACY CLAUSE

98. The First Amendment provides that "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

99. The Supreme Court has recognized the right to associate for expressive purposes, including political purposes.

100. In *Roberts v. U.S. Jaycees*, the Supreme Court stated: "we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." 468 U.S. 609, 622 (1984) (citations omitted).

101. Further, in *NAACP v. State of Alabama ex rel. Patterson*, the Supreme Court emphasized that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once

recognized by remarking upon the close nexus between the freedoms of speech and assembly." 357 U.S. 449, 460 (1958). The Court also stated: "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id*.

102. The Court also made clear that "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id*. at 460–61.

103. The "Support or Advocacy Clause" of Section 1985(3) prohibits two or more persons from conspiring "to injure any citizen in person or property on account of such support or advocacy" "toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States." 42 U.S.C. § 1985(3).

104. Circumstantial evidence establishes that Defendant Smith agreed with the Smith co-conspirators to violate Senator Blackburn's First Amendment Rights of Association by unlawfully compelling the disclosure of her cell phone toll records, thereby revealing the individuals with whom she communicated, based on her political affiliation and support for President Trump.

105. Specifically, the evidence indicates that the investigation into Donald Trump, eventually led by Defendant Smith, began as a result of political animus. News Release, Sen. Chuck Grassley, Grassley, Johnson Release Additional Arctic Frost Records Detailing Sweeping Anti-Trump Investigation (Apr. 8, 2025), https://www.grassley.senate.gov/news/news-

releases/grassley-johnson-release-additional-arctic-frost-records-detailing-sweeping-anti-trump-investigation [https://perma.cc/EJ83-T2RE] (detailing evidence "anti-Trump FBI Assistant Special Agent in Charge (ASAC) Timothy Thibault played a central role in opening and advancing the Arctic Frost investigation, despite other agents' concerns that the evidence only supported a limited preliminary investigation"); News Release, Sen. Chuck Grassley, Q&A: Arctic Frost (Oct. 17, 2025), https://www.grassley.senate.gov/news/news-releases/qanda-arctic-frost [https://perma.cc/CBF8-R95A] (explaining, based on details provided by whistleblowers, that the senior FBI official who launched Arctic Frost held a partisan bias and opened the Arctic Frost "to go after President Trump, his circle and [to] poison his campaign to return to the White House").

106. Then, rather than name an individual who had been appointed by the President and confirmed by the Senate to lead the investigation as Special Counsel, former Attorney General Garland, who had been appointed by President Joe Biden, handpicked Defendant Smith from his position at The Hague to lead the investigation and did not seek his confirmation by the Senate.[18]

107. Defendant Smith, in turn, stacked his team with individuals who had a demonstrated political bias against Republicans and supporters of Donald Trump and who had a history of protecting Democrats under criminal investigation. *See, e.g.*, Smith Cong. Dep., *supra*, at 47:22–47:25 (Defendant Smith testifying that Ray Hulser was one of his senior attorneys who was involved in the decision to subpoena Senator Blackburn); Letter from Sen. Charles E. Grassley & Sen. Ron Johnson to Merrick B. Garland, Att'y Gen., Christopher Wray, Dir., FBI, & Jack Smith, Special Counsel, DOJ 3 (Nov. 12, 2024),

[18] Press Release, U.S. Dep't of Just., Appointment of a Special Counsel (Nov. 18, 2022), https://www.justice.gov/archives/opa/pr/appointment-special-counsel-0 [https://perma.cc/JEA8-G33B] (stating that "Special Counsel Smith has resigned as the chief prosecutor for the special court in The Hague charged with investigating and adjudicating war crimes in Kosovo").

https://www.grassley.senate.gov/imo/media/doc/grassley_johnson_to_doj_-_preservation_of_records.pdf [https://perma.cc/35T7-NKU3] (noting Special Agent Walter Giardina was "an FBI employee who worked on aspects of the Mueller investigation and the Trump investigation and prosecution led by Jack Smith."); Press Release, U.S. Sen. Comm. on the Judiciary, New Records Reveal DOJ's Yearslong Efforts to Shut Down Investigation into Clinton Foundation. (Dec. 15, 2025), https://www.judiciary.senate.gov/press/rep/releases/new-records-reveal-dojs-yearslong-efforts-to-shut-down-investigation-into-clinton-foundation [https://perma.cc/HK9Z-497W] (attaching letter explaining the then-head of DOJ PIN Ray Hulser helped make "the decision to shut the [original investigation into the Clinton Foundation] case down" and noted documents showed Hulser provided the U.S. Attorney investigating the Clinton Foundation an edited timeline that "omitted ALL references to interference from DOJ and FBI leadership" into the Clinton Foundation."); News Release, Sen. Chuck Grassley, Grassley Uncovers Additional Biden FBI Weaponization in "Operation Rampart Twelve" (Apr. 21, 2026), https://www.grassley.senate.gov/news/news-releases/grassley-uncovers-additional-biden-fbi-weaponization-in-operation-rampart-twelve [https://perma.cc/LU8X-D8KT] (releasing "text messages between J.P. Cooney and Molly Gaston, two partisan prosecutors who later joined Jack Smith's team"); 171 Cong. Rec. S3453–54 (daily ed. June 18, 2025) (statement of Sen. Chuck Grassley) (Sen. Grassley stating "[w]histleblowers have told me that Special Agent [Walter] Giardina openly stated his desire to investigate Trump, even if it meant false predication."); Press Release, U.S. Sen. Comm. on the Judiciary, Grassley: FBI Records Show Partisan Officials Killed Clinton Campaign Investigation. (Nov. 13, 2025), https://www.judiciary.senate.gov/press/rep/releases/grassley-fbi-records-show-partisan-officials-killed-clinton-campaign-investigation [https://perma.cc/X5WG-NMKL] (explaining that J.P.

Cooney, who would later serve as Special Counsel Smith's Deputy Special Counsel, decided not to investigate the Clinton Foundation for campaign finance violations).

108. Defendant Smith and the Smith co-conspirators "issue[d] subpoenas for at least twenty [M]embers of Congress"—all Republicans—and unlawfully compelled the disclosure of their associations. *Arctic Frost*, S. Comm. on the Judiciary, https://www.judiciary.senate.gov/arctic-frost [https://perma.cc/SSP9-LN5H] (last visited Sep. 29, 2026) (choose "Timeline" from internal navigation bar; then scroll down to "Fall 2022–Spring 2023").

109. Defendant Smith and the Smith co-conspirators hoped to build a case against the Republican candidate for President, who was at the time challenging the sitting Democrat President in charge of the Executive Branch. And to do so, Defendant Smith and the Smith co-conspirators went to great lengths to violate Senator Blackburn's Speech or Debate Clause rights while concealing their actions from both the court issuing the NDO and Senator Blackburn herself.

110. Members of Defendant Smith's Special Counsel team further demonstrated their anti-Republican and anti-Trump bias by subpoenaing some 400 Republican individuals and entities, including at least one that did not even exist on January 6, 2021, negating any possible claimed legitimate investigative purpose for that subpoena.[19]

111. The timing of the Blackburn subpoena creates a further inference that Defendant Smith agreed with the Smith co-conspirators to unlawfully compel the disclosure of Senator Blackburn's associations because she was a Republican and a supporter of Donald Trump.

[19] *Arctic Frost: 197 Subpoena Documents Obtained by Chairman Grassley*, https://www.grassley.senate.gov/imo/media/doc/arctic_frost_197_subpoena_records_obtained_by_chairman_grassley.pdf [https://perma.cc/LG3G-2L8C] (set of 197 subpoenas Defendant Smith and Smith co-conspirators executed only to Republican organizations and individuals); *see also, e.g.*, Smith Subpoenas for America First Legal, attached to *id*. at 956–62.

Defendant Smith and the Smith co-conspirators issued the subpoena and NDO on May 25, 2023—just over a month after Senator Blackburn on April 17, 2023, became one of the first U.S. senators to endorse President Trump for reelection.[20]




Marsha Blackburn (@VoteMarsha), X (Apr. 17, 2023, at 07:13 ET), https://x.com/VoteMarsha/status/1647921098338516999 [https://perma.cc/2JSG-TV3E].

---

[20] Senator Blackburn has long supported and advocated on behalf of Donald Trump, including by serving as Vice-Chair for President Trump's 2016 transition team. Press Release, Donald J. Trump, President-Elect, President-Elect Donald J. Trump Announces New Vice Chairs and Executive Committee Members Serving on Presidential Transition Team (Nov. 29, 2016), https://www.presidency.ucsb.edu/documents/press-release-president-elect-donald-j-trump-announces-new-vice-chairs-and-executive [https://perma.cc/2GNT-YRWY]. During her 2018 Senatorial campaign, Senator Blackburn also regularly spoke of her support and advocacy for President Trump, repeating her support and advocacy for Donald Trump during the President's 2020 re-election campaign, including by promoting President Trump at the Republican National Convention.

112. The totality of the facts and reasonable inferences flowing from those facts create a reasonable inference that Defendant Smith agreed to target Senator Blackburn and violate her First Amendment Right to Association and her Speech or Debate Clause rights because she was a Republican and supporter of President Trump, which is, in turn, a violation of § 1985's Support or Advocacy Clause.

## CLAIMS FOR RELIEF

### COUNT ONE AGAINST DEFENDANT SMITH – CONSPIRACY UNDER 42 U.S.C. § 1985(3) TO VIOLATE EQUAL PROTECTION AND PRIVILEGES AND IMMUNITIES UNDER THE LAW

113. Senator Blackburn incorporates by reference all of the preceding material as if fully set forth herein.

114. Section 1985(3) of the Civil Rights Act of 1871 prohibits "two or more persons … [from] conspir[ing] … , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

115. Section 1985(3) further provides that "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

116. "To state a claim under § 1985(3), a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th

Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners, Loc. 610 v. Scott*, 463 U.S. 825, 828–29 (1983)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971).

117. In *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971), the Supreme Court held § 1985(3) creates a cause of action against private actors.

118. As alleged above, because he was unlawfully named Special Counsel, Defendant Smith remained a private citizen. As such, he lacked any legal authority to act on behalf of the DOJ. Accordingly, Defendant Smith and his actions detailed herein were all undertaken as a private citizen.[21]

119. Defendant Smith conspired with the Smith co-conspirators to deprive Senator Blackburn of her equal protection of the laws and her equal privileges and immunities under the laws by denying her these rights and privileges based on invidious class-based discrimination, namely: (i) Senator Blackburn's rights under the Speech or Debate Clause of Article I of the Constitution; (ii) Senator Blackburn's right under the First Amendment of free association; and (iii) Senator Blackburn's right under the Fourth Amendment to be free from unreasonable searches and seizures.

120. First, Defendant Smith agreed with the Smith co-conspirators to intentionally violate Senator Blackburn's privileges under the Speech or Debate Clause by compelling disclosure of her legislative materials.

121. Defendant Smith also agreed with the Smith co-conspirators to intentionally violate Senator Blackburn's privileges under the Speech or Debate Clause by obtaining an NDO in

---

[21] There is also no documented evidence that Defendant Smith took the oath of office when he was allegedly appointed. Defendant Smith could recall no details about taking an oath of office until several months later and could not explain why that administration was needed. *Oversight of the SCO and Jack Smith*, *supra*, at 30–31 (statement of Rep. Lance Gooden and testimony of Jack Smith).

conjunction with the subpoena, thereby denying Senator Blackburn of her constitutional right to an opportunity to "identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Rayburn House*, 497 F.3d at 662.

122. Second, Defendant Smith violated § 1985(3) by agreeing with the Smith co-conspirators to violate Senator Blackburn's First Amendment right of association by unlawfully compelling the disclosure of her toll records, which revealed the individuals with whom Senator Blackburn associated. U.S. CONST. amend. I; *see also NAACP*, 357 U.S. at 460 (recognizing the right of association, without disclosure to government, including for political purposes).

123. Third, Defendant Smith agreed with the Smith co-conspirators to intentionally violate Senator Blackburn's Fourth Amendment right to be free from unreasonable searches and seizures by subpoenaing her toll records with an NDO that Defendant Smith and the Smith co-conspirators obtained from the NDO-issuing court while they withheld from the court the material fact that the subpoena sought the toll records of Senator Blackburn. Senator Blackburn had a reasonable expectation of privacy in her toll records.

124. Defendant Smith and the Smith co-conspirators' actions to deprive Senator Blackburn of her rights and privileges under the Constitution as described herein were motivated by their invidious, class-based discriminatory animus against identifiable classes of American citizens—Republicans and supporters of President Trump.

125. Political classes are protected under § 1985(3). *See, e.g.*, *Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir. 1987); *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973).

126. Section 1985(3) is violated when a defendant acts with "at least a purpose that focuses upon [the class] by reason of their [class.]" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

127. Both "maliciously motivated" and "assertedly benign (though objectively invidious)" discrimination satisfy the "animus requirement" of § 1985(3). *Id*. at 269–70.

128. Senator Blackburn is a member of protected classes, pursuant to § 1985(3), of Republicans and supporters of President Trump.

129. The circumstantial evidence detailed above establishes that Defendant Smith agreed with the DOJ, FBI, SCO and employees of the same to violate Senator Blackburn's constitutional rights with "at least a purpose that focuses upon [her class] by reason of [her class.]" *Id*. at 270.

130. Accordingly, Defendant Smith violated § 1985(3) by conspiring to violate the constitutional rights afforded to Senator Blackburn by the Speech or Debate Clause, the First Amendment and the Fourth Amendment. Senator Blackburn was deprived and injured thereby, in person or property by the violation of her privacy, including the compelled disclosure of those with whom she communicated and for how long, and she is entitled to nominal damages from Defendant Smith and the injunctive and declaratory relief requested.

**COUNT TWO AGAINST DEFENDANT SMITH – CONSPIRACY UNDER 42 U.S.C. § 1985(3) TO INJURE SENATOR BLACKBURN FOR HER "SUPPORT OR ADVOCACY" OF AND FOR PRESIDENT DONALD TRUMP**

131. Senator Blackburn incorporates by reference all of the preceding material as though fully set forth herein.

132. Defendant Smith and the Smith co-conspirators agreed to unlawfully subpoena Senator Blackburn's toll records, in violation of § 1985(3)'s "Support or Advocacy Clause." 42 U.S.C. § 1985(3).

133. As noted above, the "Support or Advocacy Clause" of Section 1985(3) prohibits two or more persons from conspiring "to injure any citizen in person or property on account of

such support or advocacy" "toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States." *Id*.

134. The elements of a Support or Advocacy Clause claim are "(1) a conspiracy, and (2) 'injuring someone for' advocating for a federal candidate for office." *Kennedy v. Meta Platforms, Inc.*, No. 3:24-cv-02869-WHO, 2024 WL 4031486, at *13 (N.D. Cal. Sep. 3, 2024) (quoting *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1347 (N.D. Ga. 2023)).

135. A plaintiff need not show class-based animus to allege a Support or Advocacy Clause claim. *Federer v. Gephardt*, 363 F.3d 754, 760 (8th Cir. 2004).

136. Further, a plaintiff may be "injured in his person or property" by suffering a loss or damage compensable in common law. *See Haddle v. Garrison*, 525 U.S. 121, 127 (1998).

137. In violation of the Support or Advocacy Clause of § 1985(3), Defendant Smith agreed with the Smith co-conspirators to injure Senator Blackburn in person or property on account of Senator Blackburn's support and advocacy "toward or in favor of the election" of Donald Trump as President. 42 U.S.C. § 1985(3).

138. Specifically, Defendant Smith agreed with the Smith co-conspirators to subpoena Senator Blackburn's toll records in violation of the Speech or Debate Clause, the First Amendment's right of association and the Fourth Amendment right to be free from unreasonable searches and seizures.

139. In doing so, Defendant Smith injured Senator Blackburn in person or property by violating her privacy, including by assessing with whom she communicated and for how long.

140. The same evidence detailed above establishes Defendant Smith agreed with the DOJ, FBI, SCO and employees of the same to injure Senator Blackburn in person or property because of her support of and advocacy for Donald Trump.

141. As a result of the foregoing unlawful acts by Defendant Smith, Senator Blackburn has been injured under § 1985(3) and is entitled to nominal damages and the injunctive and declaratory relief requested.

**COUNT THREE AGAINST DEFENDANT SMITH – VIOLATION OF SPEECH OR DEBATE CLAUSE, U.S. CONST. ART. I, § 6, CL. 1**

142. Senator Blackburn incorporates by reference all of the preceding material as though fully set forth herein.

143. Defendant Smith unlawfully subpoenaed Senator Blackburn's toll records, in violation of Article I's Speech or Debate Clause, U.S. CONST. art. I, § 6, cl. 1.

144. The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." *Id.*

145. Under *Rayburn House*, 497 F.3d at 656, "compelled disclosure of privileged material to the Executive during execution of [a] search warrant … violated the Speech or Debate Clause."

146. The Speech or Debate Clause also requires that Members of Congress and Senators be permitted an "opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id.* at 656, 662.

147. Defendant Smith determined that he would seek the NDO to accompany the subpoena for Senator Blackburn's toll records while withholding from the Court the material fact that the subpoena sought the toll records of a sitting U.S. Senator.

148. The effect of the NDO was that Verizon was prevented from informing Senator Blackburn that her toll records were being subpoenaed.

149. Senator Blackburn's toll records that were subpoenaed included legislative materials and thus Defendant Smith compelled the disclosure of privileged materials in violation of her rights under the Speech or Debate Clause.

150. Further, because Defendant Smith unlawfully obtained the NDO, he prevented Senator Blackburn from exercising her right under the Speech or Debate Clause to move to quash the subpoena.

151. Had Senator Blackburn known of the subpoena, she would have filed a motion to quash based on the Speech or Debate Clause.

152. Defendant Smith further determined and instructed the Smith co-conspirators to maintain Senator Blackburn's toll records until at least February 1, 2030.

153. As a result of Defendant Smith's violation of the Speech or Debate Clause, Senator Blackburn's toll records remain unlawfully possessed by the Department of Justice.

154. Under *Rayburn House*, 497 F.3d at 665, Defendant Smith's unconstitutional seizure of her toll records in violation of the Speech or Debate Clause entitles Senator Blackburn to an injunction compelling the return of her toll records.

## COUNT FOUR AGAINST DEFENDANT SMITH – VIOLATION OF THE FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, U.S. CONST. AMEND. IV

155. Senator Blackburn incorporates by reference all of the preceding material as though fully set forth herein.

156. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

157. As a Senator, under the Speech or Debate Clause and 2 U.S.C. § 6628, Senator Blackburn had a reasonable expectation of privacy in her cell phone toll records and a right to seek to quash the subpoena of those records.

158. Defendant Smith determined that he would seek the NDO to accompany the subpoena for Senator Blackburn's toll records while unlawfully withholding from the Court the material fact that the subpoena sought the toll records of a sitting U.S. Senator.

159. Defendant Smith then caused the subpoena and NDO to be served on Verizon and caused the seizure, and later search, of Senator Blackburn's toll records.

160. By withholding from the Court the material fact that the subpoena sought the toll records of a sitting U.S. Senator, Defendant Smith caused the unreasonable search and seizure of Senator Blackburn toll records, in violation of the Fourth Amendment.

161. Defendant Smith further determined and instructed certain of the Smith co-conspirators that Senator Blackburn's toll records should be retained until at least February 1, 2030. As a result, those unconstitutionally seized records remain in the government's possession, in violation of Senator Blackburn's Fourth Amendment rights.

**COUNT FIVE AGAINST RELIEF DEFENDANT – INJUNCTIVE RELIEF FOR CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS**

162. Senator Blackburn incorporates by reference all of the preceding material as though fully set forth herein.

163. Defendant Smith engaged in a conspiracy to violate Senator Blackburn's civil and constitutional rights and violated Senator Blackburn's rights under the Speech or Debate Clause and the Fourth Amendment.

164. Relief Defendant DOJ received, possesses or has custody or control of the toll records unlawfully subpoenaed by Defendant Smith.

165. Relief Defendant DOJ has no legitimate entitlement to the possession, custody or control of the unlawfully obtained toll records.

166. Continued possession of the toll records by Relief Defendant DOJ violates Senator Blackburn's rights under the Speech or Debate Clause and *Rayburn House*, 497 F.3d at 656, 662, as well as the Fourth Amendment.

167. The only remedy that will vindicate the separation of powers principles underlying the Speech or Debate Clause and the Fourth Amendment's prohibition on unreasonable searches and seizures, and deter such future intentional constitutional violations is for Relief Defendant to be ordered to return all copies of the toll records to Senator Blackburn and permanently redact any reference to the toll records or the content of the toll records, in its possession, custody or control.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a. A declaration that Defendant Smith was unlawfully named and acting as Special Counsel at the U.S. Department of Justice from November 18, 2022 to January 1, 2025, in violation of the Appointments Clause, because he was an attorney from outside the United States Government who was not nominated by the President or confirmed by the Senate—nor was he appointed by the head of a department with legal authority to make such appointments.

b. A declaration that Defendant Smith's collection of Senator Blackburn's telephone toll records, and those of any other Senators and Members of Congress with whom she was communicating, pursuant to the Arctic Frost investigation and the grand jury subpoena

issued in or about May 2023, was unlawful and violated Senator Blackburn's constitutional and civil rights, including rights afforded by the Constitution's Speech or Debate Clause, the First Amendment right of association, the Fourth Amendment, and the Civil Rights Act.

c. An injunction requiring Defendant Smith to destroy any of Senator Blackburn's legislative materials, or any notes or records reflecting the content of those materials, that are in his possession, custody or control.

d. An injunction requiring Relief Defendant to return all copies of the toll records to Senator Blackburn and permanently redact any reference to the toll records or the content of the toll records, in its possession, custody, or control.

e. Nominal damages from Defendant Smith in the amount of $1.

f. All costs, expenses and attorneys' fees as provided by 42 U.S.C. § 1988(b).

g. Such other relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff herein demands a trial by jury of any triable issues in the present matter.

September 30, 2026

Respectfully submitted,

/s/ *L. Margaret Harker*
Laura Margaret Harker
Senior Litigation Counsel
Margaret.Harker@ncla.legal
*Tennessee Bar Applicant practicing pending admission pursuant to Tenn. Sup. Ct. R. 7, § 10.07
*Virginia Bar No. 82188
Margot Cleveland**
Caitlin M. Moyna**
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210
***Pro hac vice* forthcoming

*Counsel for Senator Marsha Blackburn*