**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

**NASHVILLE DIVISION**

| | |
|---|---|
| SENATOR MARSHA BLACKBURN<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN L. SMITH, in his personal capacity,<br><br>*Defendant*,<br><br>and<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Relief Defendant*. | No. 3:26-cv-01398<br><br>Hon. Douglas R. Cole |

**DEFENDANT JOHN L. SMITH'S MOTION TO DISMISS**

Defendant John L. Smith ("Mr. Smith," also referred to herein as "Jack Smith") respectfully moves this Court for dismissal of the Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2); improper venue, pursuant to Rule 12(b)(3); lack of standing, pursuant to Rule 12(b)(1); and failure to state a claim, pursuant to Rule 12(b)(6). The grounds supporting this Motion are set forth in the accompanying Memorandum and Declaration.

DATED: November 19, 2026

*/s/ Rascoe Dean*
Rascoe Dean
Christopher C. Sabis
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue
Suite 1750

Nashville, TN 37203
Tel. (615) 742-4200
rdean@srvhlaw.com
csabis@srvhlaw.com

Lanny A. Breuer (*pro hac vice*)
Peter Koski (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., NW
Washington, DC 20001-4956
Tel. (202) 662-6000
LBreuer@cov.com
PKoski@cov.com

*Counsel for Defendant John L. Smith*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

**NASHVILLE DIVISION**

| | |
|---|---|
| SENATOR MARSHA BLACKBURN<br>*Plaintiff*,<br>v.<br>JOHN L. SMITH, in his personal capacity,<br>*Defendant*,<br>and<br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br>*Relief Defendant*. | No. 3:26-cv-01398<br>Hon. Douglas R. Cole |

**DEFENDANT JOHN L. SMITH'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. The U.S. Capitol Was Attacked on January 6, 2021. .......... 2

B. Mr. Smith Was Appointed Special Counsel. .......... 4

C. The Special Counsel Conducted an Investigation. .......... 4

D. Plaintiff Brought the Instant Lawsuit. .......... 6

ARGUMENT .......... 7

I. This Court Lacks Personal Jurisdiction Over Mr. Smith. .......... 7

II. Venue Is Improper. .......... 10

III. Plaintiff Lacks Standing to Seek Injunctive and Declaratory Relief from Mr. Smith. .......... 11

IV. Mr. Smith Cannot Be Sued as a Private Actor Because He Was Validly Appointed and, in Any Event, Is Immune from Damages. .......... 14

A. Plaintiff's Appointments Clause Theory Provides No Basis for Relief Against Mr. Smith. .......... 15

B. Mr. Smith Is Immune from Plaintiff's Damages Claims. .......... 17

V. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted. .......... 22

A. The Constitutional Claims Fail. .......... 22

1. The Speech or Debate Claim Fails. .......... 23

2. The Fourth Amendment Claim Fails. .......... 25

B. Plaintiff's Section 1985(3) Claims Fail. .......... 28

1. The Equal Protection Claim Fails. .......... 29

2. The Support or Advocacy Claim Fails. .......... 34

CONCLUSION .......... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade v. Lauer*,
729 F.2d 1475 (D.C. Cir. 1984) .......... 16

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .......... 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 22, 24

*Bartell v. Lohiser*,
215 F.3d 550 (6th Cir. 2000) .......... 33

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008) .......... 3

*Bates v. Green Farms Condo. Ass'n*,
958 F.3d 470 (6th Cir. 2020) .......... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) .......... 18, 21

*Borke v. Warren*,
2023 WL 6367754 (6th Cir. Aug. 2, 2023) .......... 33

*Brace v. Ohio State Univ.*,
866 F. Supp. 1069 (S.D. Ohio 1994) .......... 29

*Branzburg v. Hayes*,
408 U.S. 665 (1972) .......... 30

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) .......... 31, 33, 34

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) .......... 8

*Browder v. Tipton*,
630 F.2d 1149 (6th Cir. 1980) .......... 33, 34

*Brown v. Reardon*,
770 F.2d 896 (10th Cir. 1985) .......... 33

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) .......... 19

*Burdeau v. McDowell*,
256 U.S. 465 (1921) .......... 23

*Burns v. Reed*,
500 U.S. 478 (1991) .......... 21

*Cameron v. Brock*,
473 F.2d 608 (6th Cir. 1973) .......... 32, 33, 34

*Carlson v. Green*,
446 U.S. 14 (1980) .......... 18

*Carten v. Kent State Univ.*,
282 F.3d 391 (6th Cir. 2002) .......... 17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 12

*Conklin v. Lovely*,
834 F.2d 543 (6th Cir. 1987) .......... 32, 33

*Crawford v. U.S. Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) .......... 12

*Davis v. Colerain Twp.*,
51 F.4th 164 (6th Cir. 2022) .......... 12

*Davis v. Passman*,
442 U.S. 228 (1979) .......... 18

*DiPiazza v. United States*,
415 F.2d 99 (6th Cir. 1969) .......... 26

*Doherty v. Am. Motors Corp.*,
728 F.2d 334 (6th Cir. 1984) .......... 29

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) .......... 23

*Edmonson v. Leesville Concrete Co.*,
500 U.S. 614 (1991) .......... 22

*Egbert v. Boule*,
596 U.S. 482 (2022) .......... 18

*Farber v. City of Paterson*,
440 F.3d 131 (3d Cir. 2006) .......... 33

*In re Fattah*,
802 F.3d 516 (3d Cir. 2015) .......... 20, 24

*Filarsky v. Delia*,
566 U.S. 377 (2012) .......... 18, 19, 21

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
608 U.S. 174 (2026) .......... 30

*Forrester v. White*,
484 U.S. 219 (1988) .......... 19

*Gone to the Beach, LLC v. Choicepoint Servs., Inc.*,
434 F. Supp. 2d 534 (W.D. Tenn. 2006) .......... 10

*Gordon v. Greenview Hosp., Inc.*,
300 S.W.3d 635 (Tenn. 2009) .......... 8

*In re Grand Jury Investigation*,
587 F.2d 589 (3d Cir. 1978) .......... 20, 23, 24

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) .......... 15

*In re Grand Jury Proc.*,
810 F.2d 580 (6th Cir. 1987) .......... 30

*Gravel v. United States*,
408 U.S. 606 (1972) .......... 23, 24

*Gray v. Bell*,
712 F.2d 490 (D.C. Cir. 1983) .......... 21

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .......... 29, 34

*Grimes v. Smith*,
776 F.2d 1359 (7th Cir. 1985) ....................................................................................33

*Haaland v. Brackeen*,
599 U.S. 255 (2023)............................................................................................ 12, 13

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)..............................................................................................2, 19

*Harrison v. KVAT Food Mgmt., Inc.*,
766 F.2d 155 (4th Cir. 1985)......................................................................................33

*Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*,
32 F.3d 989 (6th Cir. 1994)........................................................................................33

*Heyne v. Metro. Nashville Pub. Schs.*,
655 F.3d 556 (6th Cir. 2011)............................................................................... 31, 32

*Hodges v. City of Grand Rapids*,
139 F.4th 495 (6th Cir. 2025) .......................................................................................3

*Holloway v. Brush*,
220 F.3d 767 (6th Cir. 2000).......................................................................................21

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*,
353 F. Supp. 3d 678 (M.D. Tenn. 2018)......................................................................10

*Huff v. TeleCheck Servs., Inc.*,
923 F.3d 458 (6th Cir. 2019).......................................................................................13

*Imbler v. Pachtman*,
424 U.S. 409 (1976)..............................................................................................2, 21

*Jackson v. City of Cleveland*,
925 F.3d 793 (6th Cir. 2019).......................................................................................28

*Johnson v. Duxbury*,
931 F.3d 102 (1st Cir. 2019) .......................................................................................26

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F.4th 314 (5th Cir. 2021) ..........................................................................................8

*Jones Bros., Inc. v. Sec'y of Labor*,
898 F.3d 669 (6th Cir. 2018).......................................................................................16

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
927 F.3d 396 (6th Cir. 2019).......................................................................................12

*Koubriti v. Convertino*,
593 F.3d 459 (6th Cir. 2010) .......... 18, 21

*Kush v. Rutledge*,
460 U.S. 719 (1983) .......... 34

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949) .......... 15, 17

*Leopold v. Manger*,
102 F.4th 491 (D.C. Cir. 2024) .......... 17

*Lim v. Hightower*,
2025 WL 2965692 (6th Cir. Oct. 21, 2025) .......... 3

*Lindsey v. Whitmer*,
124 F.4th 408 (6th Cir. 2024) .......... 14

*Loren v. Blue Cross & Blue Shield of Mich.*,
505 F.3d 598 (6th Cir. 2007) .......... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 12

*Mikel v. Quin*,
58 F.4th 252 (6th Cir. 2023) .......... 13

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .......... 19, 20

*O'Neal v. United States*,
601 F. Supp. 874 (N.D. Ind. 1985) .......... 30

*Pahssen ex rel. Doe v. Merrill Cmty. Sch. Dist.*,
668 F.3d 356 (6th Cir. 2012) .......... 31

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 25

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 17

*Perez-Sanchez v. Pub. Bldg. Auth.*,
531 F.3d 104 (1st Cir. 2008) .......... 32

*Phillips v. Seiter*,
173 F.3d 609 (7th Cir. 1999) ..... 11

*In re Possible Violations of 18 U.S.C. §§ 201, 371*,
491 F. Supp. 211 (D.D.C. 1980) ..... 30

*Post v. Trinity Health-Mich.*,
44 F.4th 572 (6th Cir. 2022) ..... 31, 33

*Raines v. Byrd*,
521 U.S. 811 (1997) ..... 14

*Rehberg v. Paulk*,
611 F.3d 828 (11th Cir. 2010) ..... 19

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) ..... 10

*Reps. Comm. for Freedom of the Press v. AT&T Co.*,
593 F.2d 1030 (D.C. Cir. 1978) ..... 5, 26, 30

*Ryder v. United States*,
515 U.S. 177 (1995) ..... 16, 17

*Schultz v. Sundberg*,
759 F.2d 714 (9th Cir. 1985) ..... 33

*In re Sealed Case*,
80 F.4th 355 (D.C. Cir. 2023) ..... 23, 24, 26

*Smith v. Maryland*,
442 U.S. 735 (1979) ..... 25, 26, 27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 12

*Stafford v. Briggs*,
444 U.S. 527 (1980) ..... 11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..... 13

*Taylor v. Brighton Corp.*,
616 F.2d 256 (6th Cir. 1980) ..... 34

*Taylor v. Duncan*,
720 F. Supp. 2d 945 (E.D. Tenn. 2010) ..... 24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........ 3

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ........ 7, 8

*Tobien v. Nationwide Gen. Ins. Co.*,
133 F.4th 613 (6th Cir. 2025) ........ 11

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*,
463 U.S. 825 (1983) ........ 28, 32

*United States v. Brewster*,
408 U.S. 501 (1972) ........ 23, 24

*United States v. Ferguson*,
681 F.3d 826 (6th Cir. 2012) ........ 3

*United States v. Jacobsen*,
466 U.S. 109 (1984) ........ 23

*United States v. Miller*,
425 U.S. 435 (1976) ........ 26, 27

*United States v. Nixon*,
418 U.S. 683 (1974) ........ 15

*United States v. Rayburn House Off. Bldg., Room 2113*,
497 F.3d 654 (D.C. Cir. 2007) ........ 20, 24

*United States v. Renzi*,
651 F.3d 1012 (9th Cir. 2011) ........ 20, 24

*United States v. Smith*,
962 F.3d 755 (4th Cir. 2020) ........ 15

*United States v. Tarrio*,
605 F. Supp. 3d 73 (D.D.C. 2022) ........ 2

*United States v. Trump*,
740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........ 16

*United States v. Trump*,
757 F. Supp. 3d 82 (D.D.C. 2024) ........ 6

*United States v. Trump*,
88 F.4th 990 (D.C. Cir. 2023) ........ 5

*United States v. Young*,
847 F.3d 328 (6th Cir. 2017) .... 5

*US Dominion, Inc. v. MyPillow, Inc.*,
2022 WL 1597420 (D.D.C. May 19, 2022) .... 34

*Vakilian v. Shaw*,
302 F. App'x 350 (6th Cir. 2008) .... 21

*Volunteer Med. Clinic, Inc. v. Operation Rescue*,
948 F.2d 218 (6th Cir. 1991) .... 29

*Walden v. Fiore*,
571 U.S. 277 (2014) .... 9

*Ward v. Nat'l Patient Account Servs. Sols., Inc.*,
9 F.4th 357 (6th Cir. 2021) .... 12

*Warth v. Seldin*,
422 U.S. 490 (1975) .... 13

*Wilcoxon v. Bernard*,
2026 WL 1129334 (6th Cir. Apr. 13, 2026) .... 28

*Williams v. FirstPlus Home Loan Tr. 1996-2*,
209 F.R.D. 404 (W.D. Tenn. 2002) .... 8

*Wilson v. Layne*,
526 U.S. 603 (1999) .... 20

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .... 2, 28

**Constitutional Provisions**

U.S. Const. art. I, § 6, cl. 1 .... 23

U.S. Const. art. II
§ 2, cl. 2 .... 15
§ 3 .... 16

U.S. Const. amend. I .... 30

U.S. Const. amend. IV .... 25

U.S. Const. amend. XIV, § 1 .... 8, 33

**Statutes**

2 U.S.C. § 6628 .... 26, 27

28 U.S.C.
§ 503 .......... 15
§ 509 .......... 4, 15
§ 510 .......... 4, 15
§ 515 .......... 4, 15
§ 533 .......... 4, 15
§ 547 .......... 15
§ 1391 .......... 10, 11
§ 1406 .......... 11

42 U.S.C.
§ 1983 .......... 18
§ 1985 .......... 28, 34

Pub. L. No. 119-37, div. C, tit. II, § 213, 139 Stat. 585–86 (2025) .......... 27

Pub. L. No. 119-75, div. H, § 105, 140 Stat. 629 (2026) .......... 27

Tenn. Code Ann. § 20-2-222(1) .......... 8

**Rules**

Fed. R. Civ. P. 12 .......... 8

Fed. R. Evid. 201(b) .......... 3

**Other Authorities**

Att'y Gen. Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel* (Nov. 18, 2022) .......... 4

Final Report of the Special Counsel Under 28 C.F.R. § 600.8, Vol. One: The Election Case, U.S. Dep't of Just. (Jan. 7, 2025) .......... 3, 4, 5, 6

Merrick B. Garland, Att'y Gen., U.S. Dep't of Just., Remarks on the Appointment of a Special Counsel (Nov. 18, 2022) .......... 4

Note, *The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1382 (2020) .......... 34

Off. of the Inspector Gen., U.S. Dep't of Just., No. 25-010, A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media (Dec. 2024) .......... 6

X. Wang, *The Making of Federal Enforcement Laws, 1870-1872*, 70 Chi.-Kent L. Rev. 1013 (1995) .......... 28

## INTRODUCTION

Plaintiff Marsha Blackburn ("Plaintiff"), a U.S. Senator from the State of Tennessee and that State's Governor-elect, brings baseless personal-capacity claims against former Special Counsel John L. Smith ("Mr. Smith," also referred to herein and in the Complaint as "Jack Smith"). Plaintiff challenges a single subpoena to a third party for four days of her telephone toll records, issued as part of the investigation Mr. Smith and his office conducted into President Donald Trump's well-documented efforts to interfere with the peaceful transfer of power following the 2020 presidential election. Plaintiff's claims are unprecedented and fail at every step. The Complaint should be dismissed.

In 2023, the Special Counsel's Office at the Department of Justice ("DOJ") issued a grand jury subpoena to a third-party carrier for business records consisting of four days of Plaintiff's non-content telephone toll records, accompanied by a non-disclosure order from the U.S. District Court for the District of Columbia. Plaintiff now asks *this* Court to award her $1 in nominal damages and provide equitable relief for that narrow subpoena. In so doing, she challenges routine investigative tools used by law enforcement officials across the country: a grand jury subpoena, a court-authorized non-disclosure order, and prosecutors' review of non-content records to verify witness accounts and reconstruct events.

At the threshold, this Court lacks personal jurisdiction over Mr. Smith and venue is improper. Beyond that, Plaintiff lacks standing to seek equitable relief. Mr. Smith left government service in January 2025, the subpoena is a completed act, and the records Plaintiff wants destroyed are, by her own account, held by DOJ. That leaves only Plaintiff's claim for nominal damages, but Mr. Smith is immune from personal suit for his prosecutorial acts. Mr. Smith was a federal employee properly appointed as Special Counsel, and every act Plaintiff challenges was a governmental act, taken in the course of Mr. Smith's duties at the Department of Justice. Plaintiff cannot use a challenge to his

appointment to recast his official acts as private conduct, much less to overcome settled immunities.

The claims also fail on their own terms. The alleged conspiracy describes DOJ employees doing their jobs. The constitutional claims target a man Plaintiff herself calls a private citizen, though the Constitution does not reach private conduct. And no constitutional provision prevents a prosecutor from compelling the production of a Senator's toll records from a private telephone carrier.

The consequences of Plaintiff's suit reach far beyond this case. If the subject of any investigation could evade the robust guardrails that limit suits against prosecutors and other federal employees for actions taken in the course of doing their jobs—merely by alleging that those actions were undertaken by federal employees acting in their personal capacity—, every significant federal investigation would invite protracted litigation against the prosecutors who conducted it. The Supreme Court has repeatedly warned against expanding personal liability in ways that chill independent official judgment. *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). That risk is especially acute for prosecutors because "a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions"; and defending those decisions "years after they were made" would impose "unique and intolerable burdens." *Imbler v. Pachtman*, 424 U.S. 409, 425–26 (1976). These concerns apply with particular force here, where a sitting U.S. Senator asks a federal court to second-guess core prosecutorial judgment. The Court should decline that invitation.

## BACKGROUND

### A. The U.S. Capitol Was Attacked on January 6, 2021.

This case arises out of the federal investigation into the attack on the U.S. Capitol on January 6, 2021, the day Congress convened in Joint Session to count and certify the electoral votes of the 2020 presidential election. That certification process marks the peaceful transfer of power, which is "one of our Nation's crown jewels." *United States v. Tarrio*, 605 F. Supp. 3d 73, 78 (D.D.C. 2022).

As the initial indictment against President Trump charged, after he "lost the 2020 presidential election," he "was determined to remain in power," spread knowingly false claims of "outcome-determinative fraud in the election," and conspired "to corruptly obstruct and impede the January 6 congressional proceeding." Indictment ¶¶ 1–2, 4, *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C. Aug. 1, 2023), ECF No. 1 ("Indictment"). President Trump took significant steps to that end, including pushing "officials in certain states to ignore the popular vote; disenfranchise millions of voters; dismiss legitimate electors; and ultimately cause the ascertainment of and voting by illegitimate electors in favor of [President Trump]." Indictment ¶ 10(a). He also "attempted to enlist the Vice President to use his ceremonial role at the January 6 certification proceeding to fraudulently alter the election results." *Id.* ¶ 10(d). And when he could not convince the Vice President to "fraudulently alter the election results," *id.* ¶ 86, he "direct[ed] an angry mob to the United States Capitol to obstruct the congressional certification of the presidential election and then leverage[d] rioters' violence to further delay it," Final Report of the Special Counsel Under 28 C.F.R. § 600.8, Vol. One: The Election Case, U.S. Dep't of Just. (Jan. 7, 2025), *available at* [https://perma.cc/J5HR-GWGR], at 3 ("Rep.").[1]

That violence ensued is beyond dispute. *See, e.g.*, Indictment ¶ 107; Rep. at 3. A crowd breached the Capitol, forcing the Senate to recess, and "assaulted at least 140 law enforcement officers," some with "bear spray, metal bats and flag poles, and other improvised weapons." Rep. at 29, 78–79. President Trump refused to tell the rioters to disperse. Indictment ¶¶ 110, 114. Instead,

---

1 When reviewing a motion to dismiss, courts may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), and "take judicial notice of 'a fact that is not subject to reasonable dispute,' " *Lim v. Hightower*, 2025 WL 2965692, at *4 (6th Cir. Oct. 21, 2025) (quoting Fed. R. Evid. 201(b)), including facts reflected in public records, *Hodges v. City of Grand Rapids*, 139 F.4th 495, 512 (6th Cir. 2025); *see also United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (judicial records are of "reasonably indisputable accuracy"). The public records cited here, which reflect facts referred to throughout the Complaint, and which are "central to the claims contained therein," may be considered by this Court without converting the motion to one for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

he and his co-conspirators called or tried to call Members of Congress, including as many as seven Senators, to "convince [them] to further delay the certification." *Id.* ¶¶ 10, 119. The attack forced Congress to recess for approximately six hours, delaying certification of results in favor of President-elect Joe Biden until 3:41 a.m. on January 7. *Id.* ¶¶ 121, 123.

### B. Mr. Smith Was Appointed Special Counsel.

By the fall of 2022, President Trump was "a subject of [a] criminal investigation[] by the Department of Justice" "into whether any person violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election." Rep. at 1 (referring to the matter as "the Election Case"). The Attorney General appointed Mr. Smith as Special Counsel to ensure that prosecutorial decisions were "guided only by the facts and the law" and to underscore the Department's commitment to "independence and accountability in particularly sensitive matters." *Id.* at 92 (quoting Merrick B. Garland, Att'y Gen., U.S. Dep't of Just., Remarks on the Appointment of a Special Counsel (Nov. 18, 2022)); Compl. ¶ 5 & n.2 (citing Att'y Gen. Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel* (Nov. 18, 2022) ("Appointment Order"), [https://perma.cc/G3TT-SHWX]). The Appointment Order authorized Mr. Smith to continue the Election Case investigation and "to prosecute federal crimes arising from" it. Appointment Order ¶¶ (b), (d); *see also* 28 U.S.C. §§ 509, 510, 515, 533 (authorizing Attorney General to appoint individuals to investigate and prosecute crimes against the United States).

### C. The Special Counsel Conducted an Investigation.

Mr. Smith investigated serious allegations of criminal activity relating to efforts to interfere with the lawful transfer of power following the 2020 presidential election using routine, well-established investigative techniques in accordance with applicable law and DOJ policy. Rep. at 2–3, 92–95. After investigating, Mr. Smith lawfully sought indictments of the President and others; a grand jury made up of the President's peers returned an indictment against him. *See generally* Indictment.

Throughout the investigation, the Special Counsel and his Office employed "traditional investigative tools, including voluntary interviews, grand jury subpoenas, and search warrants," as well as "court orders for non-content information … from electronic communications accounts," all "subject to the same legal requirements binding on all federal prosecutors." Rep. at 92–93. One form of information sought was toll records, which "include information concerning dates, times, durations and telephone numbers for sources or recipients of calls placed and received," Compl. ¶ 44, and upon which Mr. Smith relied for portions of his Report, *e.g.*, Rep. at 31 n.132. Obtaining toll records to confirm when certain calls were made on and around January 6, 2021, including from Members, was relevant for the Special Counsel's investigation because during "th[e] violence, President Trump and his associates tried to call Members of Congress in furtherance of their criminal scheme, urging them to further delay certification of the 2020 election. [Mr. Smith] did not choose those Members[;] President Trump did." Transcript of Deposition of Jack Smith at 18:17–20, H. Comm. on the Judiciary (Dec. 17, 2025) ("Dep. Tr."), *available at* [https://perma.cc/575Q-PYPG]; *see also* Rep. at 31–32.[2]

Because the Special Counsel's Office knew that, "after election day in 2020," President Trump "sought to … intimidate individuals who refuted his lies," Gov't's Opposed Mot. to Ensure That Extrajudicial Statements Do Not Prejudice These Proceedings at 1–2, *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C. Sept. 15, 2023), ECF No. 57, the Special Counsel's Office sought "non[-]disclosure orders for the toll record subpoenas," Dep. Tr. 39:5–6; *see also* Compl. ¶ 46 & n.9. This decision proved well founded. *See United States v. Trump*, 88 F.4th 990, 998, 1012–13 (D.C. Cir. 2023)

---

[2] Subpoenas for toll records, which "do not include the content of calls" but "were relevant to complete a comprehensive investigation" of the January 6 "attack on the structure of our democracy," Dep. Tr. 18:12–16, are commonly issued by prosecutors, *see, e.g.*, *United States v. Young*, 847 F.3d 328, 345 (6th Cir. 2017) (describing toll information and grand jury subpoenas as among prosecutors' "traditional techniques"); *Reps. Comm. for Freedom of the Press v. AT&T Co.*, 593 F.2d 1030, 1036–37 (D.C. Cir. 1978) (toll-billing records used in criminal investigations for at least 50 years), *cert. denied*, 440 U.S. 949 (1979).

(agreeing with the district court that President Trump's public attacks on individuals posed "a significant and imminent threat to individuals' willingness to participate fully and candidly in the [judicial] process"); Order at 2, *Trump*, No. 1:23-cr-00257-TSC (D.D.C. Oct. 17, 2023), ECF No. 105 (finding that those President Trump publicly attacked were "consequently threatened and harassed"); *see also* Rep. at 112–14.

Before seeking toll records for Members of Congress, the Office consulted the Public Integrity Section ("PIN") of DOJ's Criminal Division, which has expertise in Speech or Debate Clause issues. Rep. at 94, 100; Compl. ¶¶ 77–78. PIN concurred in the issuance of the subpoenas for the Members' toll records. Compl. ¶¶ 78–79, 81.

As relevant here, a federal grand jury subpoena, dated May 25, 2023, and a non-disclosure order ("NDO") signed by the Chief Judge of the U.S. District Court for the District of Columbia, were sent to Verizon from a DOJ attorney in the Special Counsel's Office, seeking Plaintiff's toll records. *See* Compl. ¶¶ 8, 10 n.4, 44, 46 & n.9, 51, 111; Grand Jury Subpoena to Verizon & Attachment, Grand Jury No. 22-7, Subpoena No. GJ20230524-E0361, at 7 (PDF pagination) (D.D.C. May 25, 2023), [https://perma.cc/XHX9-Q3CG]. At the time, Department policy did not require applications for NDOs to disclose that the underlying records belonged to a Member of Congress; that requirement was not added until September 2024. *See* Off. of the Inspector Gen., U.S. Dep't of Just., No. 25-010, A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media, at 4, 25, 41 (Dec. 2024), https://oig.justice.gov/sites/default/files/reports/25-010.pdf [https://perma.cc/LB7W-7T7G].

**D. Plaintiff Brought the Instant Lawsuit.**

After President Trump won the 2024 election, the Special Counsel's Office moved to dismiss the Election Case against him, consistent with the Department's longstanding position that a sitting

President may not be prosecuted. The court granted the motion. *See United States v. Trump*, 757 F. Supp. 3d 82, 82–83 (D.D.C. 2024). Mr. Smith's appointment ended in January 2025.[3] The subpoena for Plaintiff's toll records became public on October 6, 2025. Compl. ¶ 71. But Plaintiff took no action for nearly a year—filing this Complaint on September 30, 2026, the day after she failed to attend a hearing of the Senate Judiciary Committee (of which she is a member), where Mr. Smith testified publicly about his work. *See Senate Judiciary Committee Holds Hearing on Jack Smith's Targeting of Republicans*, CQ Transcriptions, at 26, 59 (Sept. 29, 2026) (Chairman Grassley reading Senator Blackburn's statement into the record). Plaintiff does not challenge the Special Counsel's findings or the evidence underlying the indictment. *See generally* Compl. She seeks $1 in nominal damages from Mr. Smith, along with declaratory relief and an injunction concerning records she concedes are held by the Department. Compl., Prayer ¶¶ (a)–(d); Compl. ¶ 161.

## ARGUMENT

This Court need not reach the merits, as it lacks personal jurisdiction over Mr. Smith, and venue is improper. Plaintiff also lacks standing to seek the equitable relief she requests, leaving only nominal damages, from which Mr. Smith is immune. Were the Court nevertheless to reach the merits, the Complaint fails to state a claim.

### I. This Court Lacks Personal Jurisdiction Over Mr. Smith.

Plaintiff bears the burden of establishing that this Court may exercise personal jurisdiction over Mr. Smith. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).[4] The Complaint does

[3] Although the Complaint asserts that Mr. Smith's appointment ended on January 1, 2025, a January 11, 2025, DOJ filing describes January 10, 2025, as Mr. Smith's last day. *Compare* Compl. ¶ 4 *with* U.S. Opp'n to Defs.' Mot. to Extend Temporary Inj. at 10 n.3, *United States v. Nauta*, No. 9:23-cr-80101-AMC (S.D. Fla. Jan. 11, 2025), ECF No. 690 ("The Special Counsel completed his work and submitted his final confidential report on January 7, 2025, and separated from the Department on January 10."). Regardless, all parties agree that Mr. Smith's appointment ended in January 2025.

[4] Unless otherwise noted, internal citations and quotation marks are omitted and all emphasis is added.

not allege facts sufficient to establish general or specific jurisdiction for any claim.

***General Personal Jurisdiction.*** Tennessee authorizes jurisdiction over "[a] person domiciled ... in[] the state ... as to any claim for relief." Tenn. Code Ann. § 20-2-222(1) (2025). Plaintiff does not allege that Mr. Smith is a domiciliary of Tennessee and so fails to invoke general personal jurisdiction. Indeed, Mr. Smith is not domiciled in Tennessee and was not domiciled in Tennessee when this suit was filed.[5] *See* Declaration of John L. Smith ("Smith Decl.") ¶¶ 2–3.[6]

***Specific Personal Jurisdiction.*** Consistent with the Fourteenth Amendment's Due Process Clause, Tennessee courts may exercise specific personal jurisdiction over a nonresident defendant only where (1) "the nonresident defendant has purposely established significant contact with the forum state" and (2) "the plaintiff's cause of action arises out of or is related to these activities or contacts." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 647 (Tenn. 2009). The relevant inquiry focuses on the defendant's own forum-directed conduct giving rise to the claims at issue. A defendant's contacts with a forum that are unrelated to claims cannot create jurisdiction for those claims. *See Bristol-Myers Squibb Co. v. Super. Court*, 582 U.S. 255, 264 (2017); *accord Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) ("[A] state cannot use a defendant's forum contacts—even purposeful ones—to invent jurisdiction over claims that do not relate to or arise from those contacts.").

The Complaint does not satisfy this familiar standard. Plaintiff principally alleges that Mr. Smith sought and obtained four days' worth of toll records associated with a Tennessee resident, a

---

[5] To the extent Plaintiff's allegations regarding Mr. Smith's previous ownership of Tennessee property are intended to invoke general jurisdiction, they fail to do so. Property ownership alone cannot establish domicile. *See Williams v. FirstPlus Home Loan Tr. 1996-2*, 209 F.R.D. 404, 412 (W.D. Tenn. 2002) ("Since plaintiffs can point to no contacts with Tennessee other than the [defendants'] holding of mortgages secured by property in Tennessee, the court finds that it cannot exercise general personal jurisdiction…"). And, even if it did, Mr. Smith sold the property years before this suit commenced. Smith Decl. ¶ 10.

[6] A declaration submitted in support of a Rule 12(b)(2) motion does not convert the motion into one for summary judgment because Rule 12(d)'s conversion requirement applies only to Rule 12(b)(6) and Rule 12(c) motions. Fed. R. Civ. P. 12(b)(2), 12(d); *see also Theunissen*, 935 F.2d at 1458.

Tennessee telephone number, and calls involving a U.S. Senator representing Tennessee. But those allegations concern *Plaintiff's* connections to Tennessee and the alleged effects of the challenged conduct, not Mr. Smith's own contacts with the forum. As the Supreme Court has explained, the jurisdictional inquiry must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). *Walden* specifically rejected the argument that a defendant's knowledge of a plaintiff's forum connections, combined with foreseeable effects in the forum, can establish minimum contacts because that approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289.

Just so here. The Complaint does not allege that Mr. Smith traveled to Tennessee, directed investigative activity from or into Tennessee, or otherwise purposefully availed himself of the privilege of conducting activities within Tennessee in connection with the challenged conduct. Rather, the Complaint rests upon actions Mr. Smith allegedly undertook in his official capacity as Special Counsel, in the course of a federal investigation conducted from the District of Columbia. The specific conduct challenged in the Complaint was directed not from or at Tennessee, but from and at the District of Columbia and New Jersey: the Special Counsel's Office sought (and a grand jury sitting in the District of Columbia issued) a subpoena seeking records from Verizon, a telecommunications provider based in New Jersey. Smith Decl. ¶ 13. Plaintiff's allegations that the records related to a Tennessee resident or involved a telephone number with a Tennessee area code cannot establish that Mr. Smith purposefully directed his challenged conduct toward Tennessee for purposes of specific jurisdiction.[7]

Nor do Plaintiff's allegations regarding Mr. Smith's historical connections to Tennessee

[7] Similarly, the Complaint's allegation (at ¶ 16) that Plaintiff and other callers were located in Tennessee when certain calls reflected in the toll records were made or received identifies no relevant conduct by Mr. Smith in or directed toward Tennessee.

establish jurisdiction. The Complaint alleges that Mr. Smith owned property in Nashville and previously served as First Assistant United States Attorney and Acting United States Attorney in the Middle District of Tennessee. Compl. ¶ 17 & n.6. But Plaintiff does not allege that any of those contacts gave rise to her claims. Not only did the challenged conduct occur years after Mr. Smith's Tennessee employment ended, Smith Decl. ¶ 4; *see also* Compl. ¶¶ 17 n.6, 111, it also bears no relationship to his prior residence or employment in the State. Because specific jurisdiction requires a connection between the forum contacts and the claims asserted, Mr. Smith's historical Tennessee ties cannot supply it here.

All four of Plaintiff's claims arise from the same conduct—the alleged acquisition and review of her toll records—not any actions that Mr. Smith directed at Tennessee. Plaintiff thus cannot establish personal jurisdiction over Mr. Smith as to any claim. *See Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 353 F. Supp. 3d 678, 690 (M.D. Tenn. 2018) (requiring plaintiff to establish personal jurisdiction as to each claim); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (same). The Complaint should be dismissed in its entirety for this reason alone.

## II. Venue Is Improper.

Plaintiff also bears the burden of proving that this District is a proper venue. *Gone to the Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006). For venue to be proper in this case, Plaintiff must establish one of the grounds set forth in 28 U.S.C. § 1391(b). She fails.

Section 1391(b)(1) does not apply because Mr. Smith does not reside in the Middle District of Tennessee, and he was not domiciled in Tennessee when this action was filed.

Section 1391(b)(2)—upon which Plaintiff relies, Compl. ¶ 18—fares no better. Under that provision, venue is proper only where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, every such event—a subpoena to an out-of-state carrier, issued in the District of Columbia, with a non-disclosure order from that District's court—

occurred outside Tennessee; Plaintiff's own Tennessee ties cannot fill the gap. *See supra* Part I. Section 1391(b)(2) focuses on the location of the acts giving rise to the claims, not the plaintiff's residence or the place where she allegedly experienced their effects. *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 622 (6th Cir. 2025) (rejecting venue based on plaintiff-side forum contacts and explaining that Congress did not intend plaintiffs to "manipulate the venue rules" contrary to venue's purpose of protecting "the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial" (emphasis in original)), *cert. denied*, 223 L. Ed. 2d 556 (2026). The alleged acts giving rise to Plaintiff's claims did not occur in this District.

Finally, Plaintiff cannot avail herself of § 1391(b)(3). That provision applies only if "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3). This action could have been brought in the District of Columbia, given Plaintiff's allegations that the subpoena and NDO originated there and that the challenged conduct arose from an investigation conducted there.

Venue is improper in this District. This is another independently sufficient reason why the Complaint should be dismissed in its entirety.[8]

## III. Plaintiff Lacks Standing to Seek Injunctive and Declaratory Relief from Mr. Smith.

Plaintiff further bears the burden of establishing the Court's subject-matter jurisdiction, of which Article III standing is a necessary component. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Standing requires "(1) [] an injury in fact, (2) that is fairly traceable to the

---

[8] Although the Court may, "in the interest of justice," transfer a case filed in the wrong district "to any district … in which it could have been brought," 28 U.S.C. § 1406(a), transfer is not warranted here. Because the Complaint suffers from multiple independent defects requiring dismissal, transfer to the District of Columbia would be futile and merely postpone the inevitable dismissal of the case. *See Tobien*, 133 F.4th at 623–25 (affirming dismissal where lawsuit "would fail on the merits if it were transferred"); *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999) (Posner, C.J.) ("[T]here is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed."). *Cf. Stafford v. Briggs*, 444 U.S. 527, 545 (1980) ("There is … no indication that a Congress concerned with the sound and equitable administration of justice[] intended to impose on those serving their Government the burden of defending personal damages actions in a variety of distant districts after leaving office." (cleaned up)).

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, the plaintiff "must 'clearly … allege facts demonstrating' each element." *Id.*; *see also Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 360–61 (6th Cir. 2021). A plaintiff must demonstrate standing for each claim and form of relief sought. *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022) ("standing to seek one form of relief does not create standing to seek another form," and "standing to bring one claim does not create standing to bring another"). And because this case asks the Court to assess the constitutionality of actions taken by another branch of the federal government, the standing inquiry is "especially rigorous." *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). Plaintiff cannot satisfy this burden as to the equitable relief she seeks from Mr. Smith.

***First***, Plaintiff lacks standing to seek declaratory relief. While "[p]ast harm allows a plaintiff to seek damages," injunctive and declaratory relief are unavailable absent "a real and immediate threat" of recurrence. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Plaintiff requests two declarations: that Mr. Smith's appointment as Special Counsel, and his Office's collection of Plaintiff's toll records, were unlawful. Compl., Prayer ¶¶ (a)–(b). But Mr. Smith's appointment ended in January 2025, *see id.* ¶ (a); Compl. ¶ 4, and the subpoena for Plaintiff's toll records was issued for a single four-day period, *see* Compl. ¶¶ 8, 44. Those alleged harms are "complete[]" and cannot support standing to seek "injunctive or declaratory relief." *Kanuszewski*, 927 F.3d at 407.

Nor would the requested declarations redress Plaintiff's alleged injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (redress must be "likely," not "speculative"); *Haaland v. Brackeen*, 599 U.S. 255, 292–93 (2023) (same). Mr. Smith does not now hold any government office. He cannot subpoena Plaintiff's records again, and she does not allege that he controls the records already

obtained. A declaration binds only "*the parties*," *Brackeen*, 599 U.S. at 293 (emphasis in original), and Plaintiff seeks no such relief against the Attorney General, Compl. ¶¶ 4, 106, or his successors, who would have "no reason" to "honor an incidental legal determination the suit produced," *Brackeen*, 599 U.S. at 293. Each desired declaration would not resolve the dispute "between [Plaintiff] and the officials who matter," and would amount to "little more than an advisory opinion." *Brackeen*, 599 U.S. at 293.

Put simply, a declaration against Mr. Smith would give Plaintiff nothing but the potential satisfaction of a favorable ruling. Such "psychic satisfaction is not an acceptable Article III remedy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Similarly, to the extent Plaintiff seeks a declaration related to records of "other Senators and Members of Congress," Compl., Prayer ¶ (b), Plaintiff cannot seek relief on behalf of third parties. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (explaining that a plaintiff generally must assert her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties).

***Second***, Plaintiff seeks an "injunction requiring Defendant Smith to destroy any of Senator Blackburn's legislative materials, or any notes or records reflecting the content of those materials, that are in his possession, custody or control." Compl., Prayer ¶ (c). But the Complaint does not allege that Mr. Smith *has* any such materials. *See generally* Compl. To the contrary, it alleges that the records "remain in the *government's* possession." Compl. ¶ 161. Because "[a]n injury in fact must be real, not abstract, actual, not theoretical, concrete, not amorphous," *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019), Plaintiff lacks standing to seek an injunction requiring Mr. Smith to destroy records she does not allege he possesses. *See Mikel v. Quin*, 58 F.4th 252, 258–59 (6th Cir. 2023) (affirming dismissal of forward-looking injunctive relief on standing grounds where plaintiff alleged no imminent future injury).

***Third***, Plaintiff asserts that the alleged defects in Mr. Smith's appointment "deprived [her]

and her fellow senators the opportunity to offer their Advice and give (or withhold) their Consent to bestow on Defendant Smith the power to act as a principal law enforcement officer of the federal government." Compl. ¶ 38. Because any such injury would be to the Senate as an institution, not to her individually, Plaintiff has not been deprived of anything "to which [she] personally [is] entitled." *Raines v. Byrd*, 521 U.S. 811, 821 (1997) (emphasis omitted). And Plaintiff does not allege that the Senate has authorized her to bring suit on its behalf. *See id.* at 829; *see also Lindsey v. Whitmer*, 124 F.4th 408, 411–15 (6th Cir. 2024) (holding that individual state legislators lacked standing to assert constitutional injury on behalf of the legislature). Because she pleads an injury that is "wholly abstract and widely dispersed," *Raines*, 521 U.S. at 829, she fails to allege an injury in fact. Consequently, to the extent that certain of Plaintiff's requested relief rests upon the lack of Senate involvement in Mr. Smith's appointment as Special Counsel—for example, her request for a "declaration that Defendant Smith was unlawfully named and acting as Special Counsel at the U.S. Department of Justice from November 18, 2022 to January 1, 2025, in violation of the Appointments Clause, because he … was not … confirmed by the Senate,"[9] Compl., Prayer ¶ (a)—such relief is unavailable as a matter of law.

Thus, the only relief that remains is Plaintiff's prayer for nominal damages, which is barred by Mr. Smith's prosecutorial and qualified immunity. *Infra* Part IV.B. Consequently, *none* of Plaintiff's requested relief is available to her.

## IV. Mr. Smith Cannot Be Sued as a Private Actor Because He Was Validly Appointed and, in Any Event, Is Immune from Damages.

Plaintiff's claims rest on a single, unsupported premise: that Mr. Smith, holding a defective title, acted "in his personal capacity" as a private actor, rather than as a government official carrying out the duties of the United States and protected by various immunities. This premise fails for two independent reasons. First, Mr. Smith was validly appointed; Plaintiff's Appointments Clause theory

[9] *See supra* note 3 regarding the dates of Mr. Smith's tenure as Special Counsel.

cannot support the relief she seeks against him. Second, regardless of the validity of his appointment, Mr. Smith is absolutely—or, at minimum, qualifiedly—immune from Plaintiff's damages claims.

### A. Plaintiff's Appointments Clause Theory Provides No Basis for Relief Against Mr. Smith.

The Complaint contends that Mr. Smith "lacked all authority to exercise the powers of a Special Counsel and was therefore acting as a private individual when he conducted the [relevant] investigation." Compl. ¶ 39 (relying on *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689–90 (1949)). Although the Complaint repeatedly invokes the Appointments Clause, *see id.* ¶¶ 5, 23–39, it asserts no cause of action under that Clause. And the theory fails for at least two independent reasons: (1) Mr. Smith was validly appointed; and (2) any Appointments Clause defect would not be redressable by or against Mr. Smith.

***First***, Mr. Smith was validly appointed. Binding Supreme Court authority, reinforced by the D.C. Circuit, establishes that the Attorney General had statutory authority to appoint him Special Counsel. *See United States v. Nixon*, 418 U.S. 683, 694 (1974) (Congress "vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties," including the Watergate Special Prosecutor (citing 28 U.S.C. §§ 509, 510, 515, 533)); *In re Grand Jury Investigation*, 916 F.3d 1047, 1053–54 (D.C. Cir. 2019) (rejecting Appointments Clause challenge to Special Counsel Mueller and holding, based on *Nixon*, that "Congress has 'by law' vested authority in the Attorney General to appoint the Special Counsel as an inferior officer"). More than 150 years of practice—from Reconstruction-era prosecutions through Watergate, Iran-Contra, and the appointments of several special counsels since—confirms that understanding. *See* Br. for the United States at 42–56, *United States v. Trump*, No. 24-12311 (11th Cir. Aug. 26, 2024), ECF No. 18 ("Eleventh Circuit Br."); *United States v. Smith*, 962 F.3d 755, 765 (4th Cir. 2020) ("[W]hen it comes to cases involving structural constitutional provisions like the Appointments Clause, history matters."). The relevant statutory text independently supports Mr. Smith's 2022 appointment. *See* 28 U.S.C. §§ 503,

509–10, 515(a), 533(1), 547(1); *see also* Eleventh Circuit Br. at 20–41.

Every court to consider the question has upheld the Attorney General's authority to appoint a special counsel, with a singular exception: the district court decision Plaintiff invokes. *See* Compl. ¶ 31 (citing *United States v. Trump*, 740 F. Supp. 3d 1245, 1253 (S.D. Fla. 2024)). That outlier ruling misread the relevant statutes, was on appeal when the case ended, and has never been adopted by any other court. It was also issued more than a year after the subpoena at issue here. Both when Mr. Smith acted and now, *In re Grand Jury Investigation* was controlling precedent in the Circuit where the grand jury sat and his office conducted the investigation. A prosecutor acting in reliance on binding circuit precedent upholding his appointment cannot be expected to anticipate that a court elsewhere might later disagree. Any other rule would invite the subjects of federal investigation to challenge prosecutors' appointments as a means of imposing personal liability, paralyzing the officials charged with enforcing federal law and interfering with the Executive Branch's Article II powers. *See, e.g.*, U.S. Const. art. II, § 3 (Take Care Clause).

***Second***, any Appointments Clause defect would not be redressable by Plaintiff's suit against Mr. Smith. The remedy for an unconstitutional appointment is at most invalidation of the challenged action, not personal damages. *See Ryder v. United States*, 515 U.S. 177, 182–83, 185 (1995) (Appointments Clause challenges do not "subject [officials] to personal damages" but "only invalidate[] actions taken pursuant to defective title"); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (vacatur as remedy). But the challenged action here, the subpoena, is complete, and Plaintiff does not seek any relief that would invalidate it.[10] Mr. Smith no longer holds office and the

[10] Even invalidation of the subpoena would likely be unavailable under the *de facto* officer doctrine, which "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment … is deficient." *Ryder*, 515 U.S. at 180; *see Andrade v. Lauer*, 729 F.2d 1475, 1496–97, 1499 (D.C. Cir. 1984) (doctrine bars untimely collateral attacks absent agency knowledge of the defect).

investigation for which the subpoena was issued has closed. Vacating the subpoena therefore would provide no relief against Mr. Smith, and Plaintiff likewise cannot obtain prospective relief from him. *See supra* Part III. Undersigned counsel is aware of no precedent permitting personal damages against an official merely because his title was later determined to be defective.

More fundamentally, even assuming *arguendo* that Mr. Smith's appointment as Special Counsel were invalid, that would mean only that he could not exercise the authority of that office—not that he ceased to be a federal employee and became a private citizen. *See Ryder*, 515 U.S. at 182–83, 185. Plaintiff misunderstands the holding of *Larson*, 337 U.S. at 689–90, in asserting that Mr. Smith would be a "private individual" if he lacked authority to act as Special Counsel. Compl. ¶ 39. *Larson* held that sovereign immunity does not bar a suit seeking prospective relief against a federal employee who exceeds his statutory authority. 337 U.S. at 689–90. But like *Ex parte Young* suits, suits filed under the *Larson-Dugan* doctrine are *official*-capacity suits, not individual-capacity suits. *See Leopold v. Manger*, 102 F.4th 491, 495 (D.C. Cir. 2024) (explaining that the two doctrines "share indistinguishable constitutional underpinnings"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984) ("At bottom, the [*Larson*] doctrine is based on the fiction of the *Young* opinion."). The Sixth Circuit, in analyzing the *Ex parte Young* doctrine, has resoundingly rejected an argument that when a state official acts in an allegedly unconstitutional manner he is therefore stripped of his "official or representative character." *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002). *Larson-Dugan* provides no support for Plaintiff's contention that Mr. Smith was acting as a private citizen when he served as Special Counsel; and it cannot support an official-capacity suit. Mr. Smith no longer has any official capacity because he is *now* a private citizen.

### B. Mr. Smith Is Immune from Plaintiff's Damages Claims.

Regardless of whether Mr. Smith's appointment was valid—and it was—he is immune from Plaintiff's § 1985(3) damages claims under Counts I and II (and any implied damages claims under

Counts III and IV). *E.g.*, *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010). To the latter point, the Complaint does not tether Plaintiff's request for nominal damages to Counts III and IV. *E.g.*, Compl. ¶¶ 154, 161. Plaintiff may not now seek to avoid dismissal of those counts by recasting Counts III and IV as implied damages claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court has recognized an implied constitutional damages remedy against federal officers in only three settings: the warrantless home search and arrest in *Bivens*, the Fifth Amendment employment-discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979), and the Eighth Amendment prison-medical-care claim in *Carlson v. Green*, 446 U.S. 14 (1980). *Egbert v. Boule*, 596 U.S. 482, 490–92 (2022). Since then, recognizing any new *Bivens* action has become a "disfavored judicial activity"; a court may not create a remedy where there is even one rational reason to think Congress is better suited to decide whether damages should be available. *Id.* at 491–93. None of Plaintiff's theories satisfies these requirements and she makes no effort to establish that they do.

As to Counts I and II, *Filarsky v. Delia*, 566 U.S. 377, 392 (2012), is instructive. In that case, the Ninth Circuit had determined that qualified immunity was unavailable to an experienced attorney against whom 42 U.S.C. § 1983 claims were brought after he conducted an investigatory interview for a municipal government. *Id.* at 381–82. The Supreme Court reversed, noting that "examples of individuals receiving immunity for actions taken while engaged in public service on a temporary or occasional basis are as varied as the reach of government itself." *Id.* at 388–89 (collecting cases). "[S]uch immunity protects government's ability to perform its traditional functions. It does so by helping to avoid 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Id.* at 389–90 (cleaned up). "Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates [are] not deterred by the threat of

damages suits from entering public service.' … Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals." *Id.* at 390 (cleaned up).

In evaluating immunity, courts therefore look to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The conduct Plaintiff challenges as to Mr. Smith—approving a grand jury subpoena, seeking an NDO, and reviewing the records produced in response to that subpoena, Compl. ¶¶ 8, 10, 45–47, 50—constitutes ordinary exercises of prosecutorial authority. For that conduct, Mr. Smith is entitled, at a minimum, to qualified immunity. (He is also entitled to absolute prosecutorial immunity, though the Court need not reach that question.) Courts have, in fact, granted qualified immunity to officials who subpoenaed telephone records. *See Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010) (granting qualified immunity for issuing subpoenas to telephone providers), *aff'd*, 566 U.S. 356 (2012).

Qualified immunity, which is "the norm" for executive officials sued in their individual capacities, shields officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 807, 818. A right is clearly established only when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). And because qualified immunity is "an immunity from suit," it should be resolved at the pleading stage, before discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). None of the rights Plaintiff asserts was—or is—clearly established. Nor, to the extent Plaintiff's theory turns on his appointment, could Mr. Smith reasonably have doubted his authority. *See supra* Part IV.A.

***Speech or Debate Clause.*** Plaintiff contends that compelling disclosure of toll records from

Verizon allegedly reflecting legislative activity violated the Speech or Debate Clause. That claim fails on the merits. *See infra* Part V.A.1. But at a minimum, no clearly established authority holds that the Clause reaches a subpoena to a third-party carrier for non-content toll records. The only appellate decision to address a Speech or Debate challenge to a toll-records subpoena found no violation, even where the Member was a target, and the courts of appeals are divided on whether any non-disclosure protection exists even if a subpoena is issued to a Member directly. *Compare In re Grand Jury Investigation*, 587 F.2d 589, 596–97 (3d Cir. 1978) (rejecting a non-disclosure privilege for toll records under the Speech or Debate Clause), *and United States v. Renzi*, 651 F.3d 1012, 1038–39 (9th Cir. 2011) (rejecting non-disclosure privilege detailed in *Rayburn*), *and In re Fattah*, 802 F.3d 516, 528–29 (3d Cir. 2015) (same), *with United States v. Rayburn House Off. Bldg., Room 2113*, 497 F.3d 654, 660, 663 (D.C. Cir. 2007) (recognizing a non-disclosure privilege). *See also infra* Part V.A.1. Plaintiff's own allegations acknowledge that the Public Integrity Section considered the potential Speech or Debate Clause objection and, after weighing the "government's potentially meritorious argument" that the subpoena would not violate the Speech or Debate Clause, approved it. *See* Compl. ¶¶ 81, 86. When the Department's own experts did not treat the question as settled against the government, it cannot be that "every reasonable official" would have known the subpoena and order were unlawful. *al-Kidd*, 563 U.S. at 741; *see also Mitchell*, 472 U.S. at 535.

***First and Fourth Amendments.*** Plaintiff's Fourth and First Amendment theories fare no better. Obtaining toll records from a third party is not a "search" under the Fourth Amendment. *Infra* Part V.A.2. And the First Amendment does not exempt citizens from a grand jury's investigative reach; nor has Plaintiff pled a violation of her right to association. *See infra* Part V.B.1(a). Where the weight of authority runs against Plaintiff on every right asserted, existing precedent cannot have placed the unlawfulness of Mr. Smith's conduct "beyond debate." *al-Kidd*, 563 U.S. at 741; *see Wilson v. Layne*, 526 U.S. 603, 618 (1999).

Although the Court need not reach the question, Mr. Smith is also entitled to absolute prosecutorial immunity. Prosecutors are absolutely immune from damages for conduct "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, including against claims for damages under *Bivens*, § 1983, and § 1985, *Koubriti*, 593 F.3d at 461–62, 468 n.10, 472; *Vakilian v. Shaw*, 302 F. App'x 350, 358 (6th Cir. 2008). Courts ask "how closely related … the prosecutor's challenged activity [is] to his role as an advocate," *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis omitted); *see also Burns v. Reed*, 500 U.S. 478, 486 (1991), and conduct "prior to indictment … may nevertheless be advocatory," *Gray v. Bell*, 712 F.2d 490, 499–500 (D.C. Cir. 1983).

The challenged conduct falls on the advocacy side of that line. Deciding which records a grand jury should compel requires "delicate judgments in deciding what evidence to seek and present." *Gray*, 712 F.2d at 503. And an application for a non-disclosure order is akin to seeking a warrant, which is "unquestionably a judicial act," *Burns*, 500 U.S. at 491–92, because the order issues only from a judge, on an ex parte application, after findings—made here—that disclosure risked tampering, witness intimidation, and serious jeopardy to the investigation, Compl. ¶ 47.

In all events, the Court need not resolve the precise boundaries of absolute immunity, because Mr. Smith is entitled to qualified immunity for the reasons above (and because there is no cause of action under *Bivens* for these claims). Denying immunity here would invite the subjects of prosecutorial subpoenas to mount challenge after challenge, suing prosecutors individually for damages. That result would defeat the very purpose of immunity—absolute or qualified—which protects prosecutors from "harassment by unfounded litigation [that] would cause a deflection of the prosecutor's energies from his public duties." *Imbler*, 424 U.S. at 423; *see Filarsky*, 566 U.S. at 390–91 (applying logic to private individuals working in close coordination with government). *Cf. Gray*, 712 F.2d at 497–98 (describing prosecutors as bringing "to bear the enormous power of the state against

individuals," creating "a unique potential for vengeful counter suits"). Under Plaintiff's theory, every special counsel since Reconstruction—through Watergate, Iran-Contra, and beyond—could have faced years of personal litigation from the subjects of the investigation. *See supra* Part IV.A.[11]

## V. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court ordinarily accepts as true all well-pleaded facts in the complaint and draws reasonable inferences in favor of the plaintiff. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). But that principle "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Rather, a complaint must plead factual content sufficient to permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. The Constitutional Claims Fail.

Plaintiff repeatedly alleges that Mr. Smith acted as "a private citizen." Compl. ¶ 118. As explained above, that is wrong. *See supra* Part IV.A. But taking Plaintiff's own characterization at face value for purposes of assessing her arguments, this assertion dooms both of her constitutional claims: such claims generally lie only against government action, not private conduct. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991). The Speech or Debate Clause protects Members of Congress from judicial or executive questioning about legislative acts (and from civil litigation initiated by private parties); it does not create an affirmative cause of action against a private actor. *E.g.*, *United States v.*

[11] Indeed, to the extent that U.S. Attorneys and Assistant U.S. Attorneys are considered inferior officers, rather than employees, disgruntled criminal defendants could seek to mount a vast array of Appointments-based challenges to prosecutorial actions.

*Brewster*, 408 U.S. 501, 517 (1972); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502–03 (1975); *Gravel v. United States*, 408 U.S. 606, 621–22 (1972). Likewise, the Fourth Amendment "was intended as a restraint upon the activities of sovereign authority," and is not violated by the "act[s] of individuals." *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). So, if Mr. Smith were the private actor Plaintiff alleges, the Fourth Amendment would be "wholly inapplicable" to his conduct. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The claims also fail on their merits.

### 1. The Speech or Debate Claim Fails.

Plaintiff contends that a grand jury subpoena to Verizon for four days of her toll records violated the Speech or Debate Clause. *See* Compl. ¶¶ 44, 143–51. The Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. Here, it applies only if (1) the conduct at issue is a "legislative act" and (2) the Member is "questioned" about it. *See In re Sealed Case*, 80 F.4th 355, 364–65 (D.C. Cir. 2023). The burden of establishing both elements "falls on" the party invoking the Clause. *In re Grand Jury Investigation*, 587 F.2d at 597. Plaintiff establishes neither.

***The "Questioned" Prong.*** No court has held that a subpoena issued to a third party for a Member's non-content toll records constitutes being "questioned" under the Clause—for good reason. Courts have identified three scenarios, or protections, related to the Clause's "Questioned" prong: (1) immunity from suit or prosecution for legislative acts, (2) an evidentiary privilege precluding the use of legislative acts in prosecutions or suits for non-legislative conduct against Members of Congress or their staff, and (3) a testimonial privilege not to be questioned about legislative acts. *In re Sealed Case*, 80 F.4th at 365.

Plaintiff does not allege that she or members of her staff are being sued or prosecuted for legislative acts. *See generally* Compl. Consequently, Plaintiff must adequately plead that the testimonial privilege covers the third-party records at issue. But neither she nor any member of her staff was

required to produce anything. Rather, the subpoena went to Verizon for Verizon's own records—not to Plaintiff or a congressional office. Compl. ¶¶ 49–50, 57. As the Third Circuit has explained, even "[h]ostile questioning of a record custodian from [the telephone] company would have no inhibiting effect on the Congressman or his personal aides." *In re Grand Jury Investigation*, 587 F.2d at 597.

Plaintiff seeks to rely on *Rayburn* to assert a privilege against "compelled disclosure" of third-party documents detailing her telephonic activity. Compl. ¶ 53 (citing *Rayburn*, 497 F.3d at 656, 662). Even this line of precedent bars only "forc[ing] *Members* to hand over documentary evidence." *In re Sealed Case*, 80 F.4th at 365 (concerning seizure of a Congressman's cell phone). And it stands alone: no other circuit recognizes even that "limited protection against the compelled disclosure of documents." *Id.*; *see In re Fattah*, 802 F.3d at 528–29; *Renzi*, 651 F.3d at 1038–39; *In re Grand Jury Investigation*, 587 F.2d at 597. Nor should this Court.

***The "Legislative Acts" Prong.*** The Complaint also fails to plead that the phone records reflect legislative acts. A legislative act is "an integral part of the deliberative and communicative processes" of Congress, *Gravel*, 408 U.S. at 625; it encompasses the formal business of each House, not activities "casually or incidentally related to legislative affairs," *Taylor v. Duncan*, 720 F. Supp. 2d 945, 952, 957 (E.D. Tenn. 2010) (quoting *Brewster*, 408 U.S. at 528). Indeed, "[n]ot all communications that may influence a vote are privileged." *In re Sealed Case*, 80 F.4th at 370. Plaintiff identifies no call within the four-day period that was integral to the Senate's deliberations; she simply declares that the toll records "included legislative materials." Compl. ¶ 149. That is a legal conclusion, not a factual allegation. *See Iqbal*, 556 U.S. at 678.

The only appellate decision to address a toll-records subpoena in connection with the Clause confirms that Plaintiff fails to plead both prongs. In *In re Grand Jury Investigation*, the Third Circuit refused to quash a subpoena for more than five years of a Congressman's toll records, even though

he was "a target of the grand jury investigation." 587 F.2d at 591–92, 598. The court reasoned that such records are "privileged only because, like a newspaper, they record *some* legislative acts," and "[o]nly the use *against* the Congressman of those portions" offends the Clause. *Id.* at 596–97 (finding no violation where the records were subpoenaed from a third-party phone company and not used to question the Congressman or his staff). If that subpoena did not offend the Clause, then a subpoena for four days of toll records for a Senator who was not a target of an investigation cannot. Plaintiff's Speech or Debate claim fails as a matter of law.[12]

### 2. The Fourth Amendment Claim Fails.

Plaintiff also cannot state a Fourth Amendment claim. She had no reasonable expectation of privacy in her toll records, so obtaining them from a third-party carrier is not a "search" within the meaning of the Fourth Amendment.

The threshold question in any Fourth Amendment case is whether a "search" occurred at all, and that question "depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). In *Smith*, the Supreme Court held that capturing the numbers dialed from a home phone "was not a 'search' " because the device used "d[id] not acquire the *contents* of communications," disclosing only call-routing information rather than the substance of any conversation. *Id.* at 741, 745–46. Because callers "voluntarily convey[] numerical information to the telephone company and 'expose[]' that information to its equipment in the ordinary course of business," they "assume[] the risk that the company would reveal to police the numbers [they] dialed." *Id.* at 744. So even if a subscriber subjectively expects the numbers dialed to remain private, that expectation is "not one that society is prepared to recognize as reasonable." *Id.* at 743.

---

[12] At a minimum, the relevant precedent here forecloses any argument that Mr. Smith violated clearly established rights. *See Pearson v. Callahan*, 555 U.S. 223, 244–45 (2009); *supra* Part IV.B; *infra* notes 15, 18, 20.

The courts of appeals, including the Sixth Circuit, have uniformly applied *Smith*'s rule to carrier-maintained toll records. *DiPiazza v. United States*, 415 F.2d 99, 103–04 (6th Cir. 1969) (obtaining toll records violates "no Fourth Amendment right"); *see Johnson v. Duxbury*, 931 F.3d 102, 106–08 (1st Cir. 2019) (collecting cases and recognizing that "[e]very circuit to consider the question" has concluded that subscribers lack a reasonable expectation of privacy in toll records); *Reps. Comm. for Freedom of the Press v. AT&T*, 593 F.2d 1030, 1043–44, 1046 (D.C. Cir. 1978) (same), *cert. denied*, 440 U.S. 949 (1979). The toll records at issue here—the numbers, times, and durations (but not the contents) of Plaintiff's calls routed through Verizon's network, *see* Compl. ¶ 44—are of the same character as in *Smith* and its progeny. And the analysis here is not different because the records were obtained by grand jury subpoena: "the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant." *United States v. Miller*, 425 U.S. 435, 444 (1976). Accordingly, Mr. Smith's subpoenaing of Plaintiff's toll records was not a Fourth Amendment search.

Plaintiff tries to escape controlling Supreme Court and Sixth Circuit precedent by invoking her office, asserting that, "*[a]s a Senator*, under the Speech or Debate Clause and 2 U.S.C. § 6628," she had a heightened "reasonable expectation of privacy in her cell phone toll records." Compl. ¶¶ 92, 157. But neither the Clause nor § 6628 affords Members of Congress greater Fourth Amendment protection over a telephone carrier's business records. The Clause provides a structural protection for legislative acts, *see supra* Part V.A.1, not a personal right against unreasonable searches. To the extent the Clause limits the compelled disclosure of documents, it does so as "one aspect of the testimonial privilege" against a Member being "questioned in any other Place" about legislative acts. *In re Sealed Case*, 80 F.4th at 365–66. The Clause "does not protect acts that are not legislative in nature, even if they are performed in a Member's official capacity," *id.* at 365, or convert that protection into a heightened expectation of privacy under the Fourth Amendment. Nor can § 6628—

a statute governing carriers' NDO-related responsibilities—create a special constitutional privacy interest in a carrier's business records. *See Miller*, 425 U.S. at 440–43.[13]

Plaintiff contends elsewhere that Mr. Smith "ignored the command" of § 6628(c) in obtaining an NDO. Compl. ¶¶ 54-55. But that provision regulates Plaintiff's carrier, not prosecutors, and it protects only "Senate data" belonging to a "Senate office." Specifically, § 6628(c) prevents a provider serving a Senate office from being barred from notifying that office when legal process seeks data transmitted, processed, or stored through services provided to or used by that office. 2 U.S.C. § 6628(a)(4), (a)(6), (c). As such, it covers Senate phones and other accounts and services associated with a Senate office, but *not* a Senator's personal phone.[14] Plaintiff does not allege that the phone at issue was a Senate phone or that the toll records were otherwise "Senate data of the Senate office." She alleges only that she used the phone "for legislative purposes," Compl. ¶ 8, which does not bring the records within the statute's scope.

*Smith* therefore controls. Like every subscriber, Plaintiff "had to convey" the numbers she dialed "to the telephone company in precisely the same way if [s]he wished to complete h[er] call." 442 U.S. at 743. Her office does not afford her a greater expectation of privacy in such records than any other subscriber. *See id.* at 743–44; *Miller*, 425 U.S. at 442–43.[15]

---

[13] Moreover, Plaintiff provides only the conclusory assertion that the "toll records that were subpoenaed included legislative materials." Compl. ¶ 149.

[14] The statute's legislative history confirms this textual limitation. In November 2025, Congress amended § 6628 to expand the definition of "Senate data" to include a Senator acting "in a personal capacity." *See* Pub. L. No. 119-37, div. C, tit. II, § 213, 139 Stat. 585–86 (2025). But in February 2026, Congress repealed that amendment in its entirety, providing that it "shall have no force or effect." *See* Pub. L. No. 119-75, div. H, § 105, 140 Stat. 629 (2026).

[15] Because obtaining Plaintiff's toll records was not a search, Count IV fails as a matter of law. At a minimum, no clearly established law gave a Senator a heightened Fourth Amendment interest in a carrier's business records, so Mr. Smith is entitled to qualified immunity on this claim. *See supra* Part IV.B; *supra* note 12; *infra* notes 18, 20.

### B. Plaintiff's Section 1985(3) Claims Fail.

Section 1985(3) is a little-used statute, rooted in the Ku Klux Klan Act of 1871. That Act was enacted following an effort led by President Ulysses S. Grant to protect "black civil rights" against "Klan terrorism." X. Wang, *The Making of Federal Enforcement Laws, 1870-1872*, 70 Chi.-Kent L. Rev. 1013, 1048–49 (1995); *see also United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 839 (1983) (Blackmun, J., dissenting) (the Act was the "Reconstruction Congress's response to politically motivated mob violence in the postbellum South designed to intimidate persons in the exercise of their legal rights").

The Act's animating purpose informs § 1985(3)'s reach today. The Supreme Court has called it "a close question" "whether § 1985(3) was intended to reach any class-based animus" outside of the civil rights movement, and has "withheld judgment on the question of whether § 1985(3), as enacted, went any further than its central concern—combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Scott*, 463 U.S. at 836–37. No close question arises here. Both of Plaintiff's § 1985(3) claims—equal protection and Support or Advocacy—should be dismissed.

As a threshold matter, both claims are barred by the intracorporate conspiracy doctrine, which the Sixth Circuit "has … applied to 42 U.S.C. § 1985(3)." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019); *see also Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) ("[A]n agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."). This doctrine precludes "conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of [her] rights." *Wilcoxon v. Bernard*, 2026 WL 1129334, at *3 (6th Cir. Apr. 13, 2026) (quoting *Jackson*, 925 F.3d at 818). Plaintiff's § 1985 counts against Mr. Smith, an official at DOJ, *supra* Part IV.A, whom she alleges conspired with other Department

employees acting within the scope of their employment to investigate potential crimes, *see* Compl. ¶ 6 n.3, are therefore barred. *Cf. Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) (applying intracorporate conspiracy doctrine to both in-house counsel and outside counsel).

Beyond that, Plaintiff fails to plead any—let alone all—of the elements of either § 1985(3) claim.

**1. The Equal Protection Claim Fails.**

"[I]n order to establish a[n equal protection] claim under § 1985(3), plaintiff must prove: 1) the existence of a conspiracy; 2) for the purpose of depriving plaintiff of equal protection of the laws or equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; 4) resulting in injury to his person or property or a deprivation of any right or privilege of his as a United States citizen." *Brace v. Ohio State Univ.*, 866 F. Supp. 1069, 1075 (S.D. Ohio 1994) (citing *Vol. Med. Clinic, Inc. v. Op. Rescue*, 948 F.2d 218, 223 (6th Cir. 1991)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (similar). Plaintiff pleads none of these: she alleges no deprivation of any right or privilege, no conspiracy or act in furtherance of one, and no membership in a class protected under § 1985(3), as required to show deprivation of equal protection or equal privileges and immunities.

**a) Plaintiff Fails to Plead Deprivation of Any Right or Privilege.**

Plaintiff's assertion that she was deprived of rights or privileges under the Fourth Amendment, Speech or Debate Clause, or First Amendment, Compl. ¶ 119, fails at the starting gate. Plaintiff's Fourth Amendment claim is foreclosed by binding precedent. *Supra* Part V.A.2. Her Speech or Debate Clause theory fails to plead either that she was "questioned" or that she was engaged in a legislative act. *Supra* Part V.A.1. And her First Amendment association theory, Compl. ¶ 119, fares no better.[16]

---

[16] Under the logic of the Complaint, any person whose toll records are subpoenaed could bring such a First

The First Amendment does not exempt citizens from a grand jury's investigative reach. *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972); *see also In re Grand Jury Proc.*, 810 F.2d 580, 583 (6th Cir. 1987). Distinguishing cases involving compelled disclosure of membership or donor information unrelated to a criminal investigation,[17] the Court held that grand jury investigations do not violate the First Amendment simply because they may incidentally reveal associational information. *Branzburg*, 408 U.S. at 700. So too here.

Nor does the subpoena at issue in this case implicate the type of disclosure that has raised associational concerns in other cases. Subpoenas for toll records are routine, useful tools for "criminal investigations and prosecutions" that may "sometimes provide[] circumstantial evidence" of contact between individuals, but "they virtually never provide direct evidence of criminality." *Reps. Comm.*, 593 F.2d at 1036–37. "Government access to [such] third-party evidence in the course of a good faith felony investigation in no sense 'abridges' " Plaintiff's First Amendment right to association. *Id.* at 1049; *see also O'Neal v. United States*, 601 F. Supp. 874, 877–80 (N.D. Ind. 1985) (rejecting a First Amendment association claim against an IRS summons for toll records).

Plaintiff has not pled a single fact suggesting that the subpoena deterred any protected activity, chilling her associational rights. *See In re Possible Violations of 18 U.S.C. §§ 201, 371*, 491 F. Supp. 211, 214 n.3 (D.D.C. 1980) (requiring "convincing proof" or at minimum a "reasonable probability" that disclosure would deter First Amendment activity); *cf. First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 191 (2026) (requiring an "objectively reasonable chill" to establish standing). A

Amendment claim. That is not the law. *E.g.*, *Reps. Comm.*, 593 F.2d at 1053–54 (the First Amendment does not afford citizens extra privacy by imposing substantive or procedural limitations on good faith criminal investigative activity above and beyond the limitations imposed by the Fourth and Fifth Amendments).

[17] In addition to not concerning grand jury subpoenas, those cases were about disclosure of donor and member information. *See also First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 186 (2026) (similar). Plaintiff does not plead that any such information was contained in her toll records from a four-day period in January 2021. *See generally* Compl.

subpoena for a four-day set of toll records showing only call numbers, times, and durations does not plausibly amount to unconstitutional compelled disclosure of political association.

Plaintiff's alternative assertion that she suffered a "violation of her privacy" also fails. Compl. ¶¶ 130, 157. Section 1985(3) creates no freestanding right to privacy, *see Post v. Trinity Health-Mich.*, 44 F.4th 572, 580 (6th Cir. 2022), and there is "no legitimate expectation of privacy" in numbers dialed from a phone, *Smith*, 442 U.S. at 743–44. Plaintiff's failure to plead deprivation of any right or privilege requires dismissal of Count I.

#### b) Plaintiff Fails to Plead a Conspiracy, Much Less One Driven by Animus.

Beyond the application of the intracorporate conspiracy doctrine, Plaintiff's "failure to plead a plan or agreement to violate [her] constitutional rights is fatal to [her] conspiracy claim." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563–64 (6th Cir. 2011). "[A] plaintiff alleging a conspiracy to deprive her of her civil rights must establish that the alleged conspirators *shared* a common discriminatory objective .... [Plaintiff pleads] no facts … indicating" the conspirators "shared that animus." *Pahssen ex rel. Doe v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (emphasis in original). "A conspiracy is not for the purpose of denying equal protection simply because it has an effect upon a protected right. The right must be *aimed at*; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993) (cleaned up) (emphasis in original).

As in *Pahssen*, Plaintiff pleads "no facts … indicating" the alleged conspirators shared a common discriminatory animus or sought to deprive her of her civil rights. *Pahssen*, 668 F.3d at 368. Rather, Plaintiff herself provides a non-discriminatory explanation for the actions of Mr. Smith and other DOJ officials. Investigators believed that "[s]ome [M]embers of Congress communicated with Trump and his surrogates in the lead up to and during the events of January 6" and sought subpoenas for toll records because many of those Members were "unlikely [to] cooperate" voluntarily with the

investigation. Compl. ¶ 76. The stated purpose of the subpoenas was to investigate those communications and develop evidence about "Trump and his surrogates' actions and intent." *Id.* Plaintiff's allegations describe an investigatory judgment tied to suspected criminal conduct, not conspiratorial action motivated by animus against Republicans or supporters of President Trump—even assuming those are protected characteristics.

Moreover, Plaintiff's contention that Mr. Smith's office was aware that there was "some litigation risk" regarding compelled disclosures of her toll records is not equivalent to allegations of an agreement to violate constitutional rights. Compl. ¶ 81. Plaintiff fails to plead even circumstantial evidence that each member of the alleged conspiracy—which she does not define with specificity, *e.g.*, Compl. ¶ 6 n.3—shared the same conspiratorial objective. Instead, she relies on the conclusory assertion that the alleged conspirators "agree[d]" to violate her rights, *see, e.g.*, Compl. ¶ 122, which this Court "need not accept … as true," *Heyne*, 655 F.3d at 563–64. Because Plaintiff fails to plead a conspiracy, she pleads no act in furtherance of one; Count I fails for this independent reason.

**c) Plaintiff Is Not Part of a Protected Class Under Section 1985(3).**

Plaintiff relies on *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973), and *Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir. 1987), to contend that "[p]olitical classes are protected under § 1985(3)," Compl. ¶ 125; she defines her class as "Republicans and supporters of President Trump," *id.* ¶ 128. Those decisions cannot bear the weight Plaintiff places on them.

*Cameron* reaches only "clearly defined classes," 473 F.2d at 610, and *Conklin* followed *Cameron* solely because a prior panel's decision bound it, while acknowledging that other circuits had read *Scott* to foreclose purely political classes, 834 F.2d at 549 (collecting cases). *See also Conklin*, 834 F.2d at 554 (Norris, J., concurring) (*Scott*'s reasoning "would appear to compel a contrary result"); *Scott*, 463 U.S. at 836–37 (declining to construe § 1985(3) in a way that would make federal courts "the monitors of campaign tactics" or federalize claims between political parties); *Perez-Sanchez v. Pub. Bldg. Auth.*, 531

F.3d 104, 108–09 (1st Cir. 2008) (declining to extend § 1985(3) to political affiliation); *Farber v. City of Paterson*, 440 F.3d 131, 135–36 (3d Cir. 2006) (similar); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 161–63 (4th Cir. 1985) (similar); *Grimes v. Smith*, 776 F.2d 1359, 1366–67 (7th Cir. 1985) (similar); *Schultz v. Sundberg*, 759 F.2d 714, 718–19 (9th Cir. 1985) (similar); *Brown v. Reardon*, 770 F.2d 896, 905–07 (10th Cir. 1985) (similar).[18]

Since *Cameron* and *Conklin*, the Supreme Court has held that a § 1985(3) "class" "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray*, 506 U.S. at 269. Applying *Bray*, the Sixth Circuit has distinguished *Cameron* and *Conklin*, *see Borke v. Warren*, 2023 WL 6367754, at *2 (6th Cir. Aug. 2, 2023), and confirmed that § 1985(3) "reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework," *Post*, 44 F.4th at 580.

Although the Sixth Circuit has recognized two kinds of classes under this clause—"1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purpose of asserting certain fundamental rights," *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000)—Plaintiff's proposed class satisfies the requirements for neither. As to the first, Plaintiff is not a member of a "discrete and insular minority," *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994); political affiliation receives no heightened scrutiny. A class that includes a sitting U.S. Senator and the members of one of the Nation's two major parties does not suffer the kind of prejudice that "curtail[s] the operation of those political processes ordinarily to be relied upon to protect minorities." *Browder v. Tipton*, 630 F.2d 1149, 1153 (6th Cir.

---

[18] As with other of Plaintiff's arguments, *supra* notes 12, 15; *infra* note 20, there is no clearly established law supporting Plaintiff's assertions under Count I (including that she was a member of a protected class). Mr. Smith is entitled to qualified immunity on this claim. *See supra* Part IV.B.

1980). As to the second, Plaintiff identifies no fundamental right that her class joined together to assert, much less one that Mr. Smith could infringe. Additionally, Plaintiff's class is not "clearly defined." *Cameron*, 473 F.2d at 610. "[S]upporters of President Trump" is a group defined by shared political conduct, the very kind of ill-defined class *Bray* rejects. 506 U.S. at 269; *cf. Taylor v. Brighton Corp.*, 616 F.2d 256, 266 (6th Cir. 1980) ("[A] group defined by conduct … is not a class cognizable under § 1985(3)."). Finally, as discussed *supra* Part V.B.1(b), the Complaint itself provides non-class-based reasons for Mr. Smith's investigative decisions. These failures also independently require dismissal of Count I.

### 2. The Support or Advocacy Claim Fails.

Plaintiff repackages her equal protection claim under the Support or Advocacy Clause of § 1985(3), alleging that Mr. Smith conspired to "injure" her because of her support for President Trump's election.[19] 42 U.S.C. § 1985(3); Compl. ¶ 133. To make out a claim of the kind Plaintiff alleges under this "obscure" and "often-neglected" Clause, Note, *The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1382, 1383 (2020), she must plead that (1) she engaged in legal support or advocacy (2) in support of the election of a qualified person for President or Vice President, in response to which (3) Mr. Smith conspired with one or more persons (4) to injure Plaintiff in person or property (5) in furtherance of which agreement at least one conspirator committed an overt act. *See, e.g.*, 42 U.S.C. § 1985(3); *Griffin*, 403 U.S. at 102–03; *Kush v. Rutledge*, 460 U.S. 719, 724–26 (1983) (no class-based animus requirement); *US Dominion, Inc. v. MyPillow, Inc.*, 2022 WL 1597420, at *6–7 (D.D.C. May 19, 2022). As with her other § 1985(3) claim, Plaintiff must satisfy all elements.

Even assuming *arguendo* that Plaintiff adequately alleges protected support or advocacy, this

[19] Whether the Support or Advocacy Clause creates a substantive right or merely provides a remedy for a separate violation remains unsettled. *E.g.*, Note, *The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1382, 1387 (2020). This Court need not resolve that question because Plaintiff fails to state a claim either way.

claim fails for the reasons already explained: she does not plausibly allege a conspiratorial agreement, and neither the alleged constitutional violations nor the toll-records subpoena supplies a cognizable injury to her person or property.[20] *See supra* Parts V.B.1(a)–(b); *contra* Compl. ¶ 136. Instead, the Complaint describes a DOJ investigation into efforts to interfere with the certification of the 2020 presidential election. *See supra* Part V.B.1(b). Count II—the Support or Advocacy claim—fails.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

DATED: November 19, 2026

<u>*/s/ Rascoe Dean*</u>
Rascoe Dean
Christopher C. Sabis
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue
Suite 1750
Nashville, TN 37203
Tel. (615) 742-4200
rdean@srvhlaw.com
csabis@srvhlaw.com

Lanny A. Breuer (*pro hac vice*)
Peter Koski (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., NW
Washington, DC 20001-4956
Tel. (202) 662-6000
LBreuer@cov.com
PKoski@cov.com

*Counsel for Defendant John L. Smith*

[20] As discussed with regard to Plaintiff's other claims, to the extent that the law is unsettled on any of these points, Mr. Smith is entitled to qualified immunity. *See supra* notes 12, 15, 18; Part IV.B.

**CERTIFICATE OF SERVICE**

I certify that on November 19, 2026, the foregoing Motion to Dismiss was filed and served through the Court's CM/ECF system on all counsel of record, including:

Brandon James Smith
Holtzman Vogel
1600 West End Avenue, Ste. 450
Nashville, TN 37203
615-647-8528
bsmith@holtzmanvogel.com

Laura Margaret Harker
Margot Cleveland
Caitlin M. Moyna
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
(202) 869-5210
Margaret.Harker@ncla.legal
Caitlin.Moyna@ncla.legal
Margotcleveland@gmail.com

The United States Department of Justice has not yet appeared in this matter, but the undersigned counsel has sent a copy of this filing to the below counsel, with whom he has been instructed to correspond regarding this case, by email and first-class mail:

Wynn Shuford
Civil Chief
United States Attorney's Office for the Middle District of Tennessee
719 Church St., Suite 3300
Nashville, Tennessee 37203
wynn.shuford@usdoj.gov

*/s/ Rascoe Dean*